[No. 64607-4. En Banc.]

Argued October 14, 1997. Decided January 7, 1999.

R.D. MERRILL COMPANY, *Defendant*, v. THE POLLUTION CONTROL HEARINGS BOARD, *Respondent*.

OKANOGAN WILDERNESS LEAGUE, ET AL., *Appellants*, v. THE POLLUTION CONTROL HEARINGS BOARD, ET AL., *Respondents*.

*Sierra Club Legal Defense*, by *Todd D. True* and *Yukihisa Ishizuka*; *Ziontz, Chestnut, Varnell, Berley & Slonim*, by *John B. Arum*; *Law Office of Charles Kimbrough*, by *Charles A. Kimbrough*; *Cutler & Nylander, P.S.*, by *Robert G. Nylander, Jr.*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Jean M. Wilkinson* and *Deborah L. Mull, Assistants*, for respondents.

*Hillis Clark Martin & Peterson*, by *Lynne M. Cohee*; *Stoel Rives, L.L.P.*, by *Sarah E. Mack*; and *Foreman & Arch*, by *Michael A. Arch*, for R.D. Merrill Co.

MADSEN, J. — This case presents several issues arising out of R.D. Merrill Company's applications for changes in water rights as part of R.D. Merrill's efforts to provide water for the Wilson Ranch, a cross-country ski resort. R.D. Merrill sought changes in points of diversion, place of use, and purpose of use. Of the five applications now at issue, we affirm the Pollution Control Board's decision upholding the Department of Ecology's approval of three of the changes sought,[1] affirm the Board's determination that one of the rights was never perfected and therefore cannot be changed,[2] and reverse and remand for further proceedings with respect to the remaining application.[3]

We adhere to our recent decision in *Okanogan Wilderness League, Inc. v. Town of Twisp*, 133 Wn.2d 769, 947 P.2d 732 (1997) concerning beneficial use of a water right before a change application may be approved under RCW 90.03.380. We also adhere to our analysis in *Rettkowski v. Department of Ecology*, 122 Wn.2d 219, 858 P.2d 232 (1993) of the public trust doctrine and its relationship to the state's water codes. We conclude that under certain circumstances a change from seasonal to year-round use is permitted under RCW 90.03.380. We hold that approval of two unperfected groundwater rights was permissible under RCW 90.44.100, which, unlike RCW 90.03.380, does not require beneficial use of the appropriative right obtained

[1] We affirm the approvals of change applications for the Vane Certificate 3362 and Domestic Groundwater Permits G4 24313P and G4 24314P.

[2] We affirm denial of the change application for the Wilson Irrigation Claim No. 131559.

[3] We reverse and remand with respect to the change application for the Willis Irrigation Claim No. 115861.

under a permit before a change in well location may be approved. We conclude that an asserted water right for irrigation under a 1915 notice of intent to appropriate was never perfected and therefore is not subject to change. Finally, we hold that material issues of fact remain as to abandonment or relinquishment of all or a part of the other irrigation right at issue, and remand for further proceedings.

## Facts

R.D. Merrill wants to build a resort consisting of a main lodge with dining facilities, 7 dwelling units, 10 lots for cabins, 10 single family lots, and a man-made lake and wetland. The land on which the development is to occur has been the subject of attempts, dating back to the 1970s, by several of R.D. Merrill's predecessors in interest to develop recreational facilities. One earlier proposed development involved a lengthy delay due to litigation involving an environmental review conducted by the United States Forest Service in conjunction with a special permit to develop ski facilities. R.D. Merrill obtained title and development rights in 1992.

In order to build its cross-country ski resort, R.D. Merrill sought to consolidate water rights for irrigation, domestic and stockwatering purposes. The water rights involved in the change applications at issue at this stage of the proceedings are as follows. The Willis irrigation right involves a claim for diverted surface water with a 1910 priority date for stockwatering and irrigation. A 1974 claims registration form indicates 23 acres were irrigated under this right. The Department approved the change application in this amount. However, the Board found that between 1920 and 1930 no more than 14 to 20 acres were irrigated, and accordingly held that the change application could be approved only to the extent of this historical use, i.e., an amount to irrigate up to 20 acres. The Board did not address the extent to which the right was used after that period of time. The Superior Court affirmed.

The Wilson well right is represented by a certificate of

water right issued in 1949, the Vane Certificate, for domestic use and stockwatering. Water was supplied under this right to a cabin continuously occupied, except during the winter, from about 1953 to the present. The Department approved a change application in the amount of one acre foot per year. The Board reduced this quantity to .67 acre feet per year to reflect the fact the right had not been used in the winter, and the Superior Court affirmed.

Two of the change applications concern unperfected groundwater permits issued in 1979 for domestic, stockwater and irrigation uses. No beneficial use of water for domestic and stockwatering uses has occurred. The Department approved transfer of these unperfected rights, the Board affirmed, and the Superior Court affirmed.

The final right at issue is the Wilson irrigation right. This asserted right is based upon a 1915 notice of water right describing a diversion of water from the Early Winters Creek. There is no evidence that diversionary works were ever constructed in accord with the notice, and there is conflicting evidence as to whether any water was ever beneficially used under this claimed right. The Department approved the change application. The Board reversed, holding the right had never been perfected and therefore was not subject to change under RCW 90.03.380. The Superior Court reversed.

## Discussion
### Change applications under RCW 90.03.380

■ Okanogan Wilderness League (OWL) makes the same argument in this case that it presented in *Okanogan Wilderness League, Inc. v. Town of Twisp*, 133 Wn.2d 769, as to what is required before transfer of a water right may be permitted. Under RCW 90.03.380, the right to use water which has been applied to beneficial use in this state is appurtenant to the land where it is used; however, the right can, without loss of priority, be transferred to another (or others) and become appurtenant to other land or place of use, or a change in point of diversion or the purpose of use

can occur, provided in each case that there is no detriment or injury to existing rights. RCW 90.03.380.[4] OWL maintains that the Pollution Control Hearings Board (Board) erred in approving changes in defendant R.D. Merrill's water rights because the Board considered only whether water rights had been historically perfected without regard to the extent to which the water rights had been actually beneficially used at the time of the applications for change.

Historic perfected use is not the measure of a water right subject to change under the statute. *Okanogan Wilderness League, Inc.*, 133 Wn.2d at 777-81. Moreover, a change application under RCW 90.03.380 is precluded where a perfected right has been abandoned or otherwise extinguished. *Id.* at 781. Thus, even if a use were historically perfected, it may have been lost in whole or in part as a result of abandonment or relinquishment. If so, the asserted right (whether in whole or in part) may not be changed or transferred under RCW 90.03.380. Accordingly, issues of abandonment and relinquishment are relevant to the question of beneficial use under RCW 90.03.380.

The amount of water actually beneficially used is also not determined solely with regard to the amount actually applied to beneficial use *immediately* prior to transfer (or change) requests, and immediate prior use is not the measure of the right which may be transferred or changed. Quantifying a water right for purposes of RCW 90.03.380 based upon beneficial use immediately prior to the time of a transfer or change application could result in an incorrect measure. For example, the amount of water applied to irrigation uses may be considerably higher or lower in a given season or year depending upon, among other things, rainfall, temperature, and recent years' history of drought or rainfall affecting surface and groundwater resources. "Neither the statute nor any authority cited by OWL supports the conclusion that the sole inquiry is whether water

---

[4] A 1997 amendment to the statute has added that changes in place of use, point of diversion, and/or purpose of use to make possible irrigation of additional acreage or addition of new uses may be allowed if the change results in no increase in the annual consumptive quantity of water used. LAWS OF 1997, ch. 442, § 801.

has been beneficially used continuously up to the time the change in diversion point is sought." *Okanogan Wilderness League, Inc.*, 133 Wn.2d at 780-81.

■ *Okanogan Wilderness League, Inc.* also resolves an additional claim made by plaintiff Burkhart that the Department improperly conducted a de facto adjudication of the rights to use waters of Early Winters Creek and the Methow River. In order to decide whether to approve a change under RCW 90.03.380, the Department must tentatively determine the existence and extent of the beneficial use of a water right. *Okanogan Wilderness League, Inc.*, 133 Wn.2d at 777-78. Quantification of the right and whether the right has been relinquished or abandoned in whole or in part are matters the Department must address in deciding whether to approve a transfer or change application. *Id.*

### Seasonal use under RCW 90.03.380

The Vane water right supplied water to a cabin continuously used except in the winter. OWL maintains that under RCW 90.03.380 a transferred right must be limited to the season in which the right has been beneficially used.

■ Long-settled western water law establishes that a water right is measured not only by quantity, but by time of use. This court gives weight to well-established principles of western water law. *Okanogan Wilderness League, Inc.*, 133 Wn.2d at 783; *Department of Ecology v. Grimes*, 121 Wn.2d 459, 475, 852 P.2d 1044 (1993); *Department of Ecology v. United States Bureau of Reclamation*, 118 Wn.2d 761, 767-69, 827 P.2d 275 (1992).

"An appropriated water right is limited *by the time* and volume of the original beneficial use. '[U]niversally recognized as a part of the law of waters in the western states [is the rule] that a water right may be measured by time as well as by volume.' " *Neubert v. Yakima-Tieton Irrigation Dist.*, 117 Wn.2d 232, 238, 814 P.2d 199 (1991) (emphasis added) (quoting *United States v. Ahtanum Ir-*

*rigation Dist.*, 330 F.2d 897, 908 (9th Cir. 1964)). Cases cited in *Ahtanum*, 330 F.2d at 915 n.15, include: *Clough v. Wing*, 2 Ariz. 371, 378, 17 P. 453 (1888); *Santa Paula Waterworks v. Peralta*, 113 Cal. 38, 44, 45 P. 168 (1896); *Cache La Poudre Reservoir Co. v. Water Supply & Storage Co.*, 25 Colo. 161, 53 P. 331 (1898); *Uhrig v. Coffin*, 72 Idaho 271, 275, 240 P.2d 480 (1952); *Galiger v. McNulty*, 80 Mont. 339, 354, 260 P. 401 (1927); *see also City of Westminster v. Church*, 167 Colo. 1, 445 P.2d 52 (1968); *Rencken v. Young*, 300 Or. 352, 711 P.2d 954 (1985).

Seasonal use is relevant to a change application. As one commentator states: "[T]iming changes which alter the length of the period or the season of the year during which water is diverted and used" can cause impermissible third party effects. George A. Gould, *Transfer of Water Rights*, 29 NAT. RESOURCES J. 457, 463 (1989). This is because water which has not been diverted and used during certain periods of time has been available during such periods for appropriation and use by others.

■ While RCW 90.03.380 does not expressly mention a change in water rights from seasonal use to year-round use, such a proposed change is implicitly covered by the statute. Aside from the requirement that water rights must have been put to actual beneficial use before transfer or change, RCW 90.03.380 allows other changes in water rights so long as there is no detriment or injury to other water rights. The statute expressly allows, for example, a change in purpose of use. Purpose of use is often tied to time of use. For example, if the purpose of use is irrigation, the right will almost always be used seasonally. Domestic water use often is year-round use. Thus, a change in purpose of use may require that time of use be changed as well in order to put the water right to the proposed new use.

However, as with other changes under RCW 90.03.380, a change in time of use may not be made which is detrimental to other appropriators' rights. If a change from seasonal to year-round use would cause injury, approval of a change in

time of use should be denied or conditioned to protect other water rights holders by, for example, limiting the use for new purposes to the same season as the historical use.

We conclude that the change in the Vane transfer was properly approved.

## RCW 90.44.100

The Board approved a change in two unperfected groundwater permits although water was never applied to beneficial use under the permits. Reliance on RCW 90.03.380 to approve a change in these rights would be improper because water must have been applied to beneficial use before a transfer or change of a water right may be approved under RCW 90.03.380.

 However, defendants argue that this transfer was proper under RCW 90.44.100. RCW 90.44.100 is found in the groundwater code, and pertains to amendments of permits and groundwater right certificates. In contrast to RCW 90.03.380, which requires beneficial use of water before a change may be approved, RCW 90.44.100 clearly allows for amendment of a groundwater permit where water has not actually been applied to beneficial use. RCW 90.44.100 addresses amendments to both certificates of groundwater rights *and* to *permits*. The statute provides that an amendment to a certificate of groundwater right or a *permit* may be applied for, and, if approved, allow the holder to construct wells or other means of withdrawal at another location or to change the manner or place of use of the water without loss of priority of right.

A certificate of groundwater right is issued when a water right is perfected. *See* RCW 90.44.080. Perfection of an appropriative right is a term of art, requiring that appropriation is complete only when the water is actually applied to a beneficial use. *See, e.g., Ellis v. Pomeroy Improvement Co.,* 1 Wash. 572, 21 P. 27 (1889); Arval A. Morris, *Washington Water Rights—A Sketch,* 31 WASH. L. REV. 243, 252, 258 (1956); 2 WATERS AND WATER RIGHTS § 14.03(d) (Robert E. Beck ed., 1991).

However, a permit to appropriate groundwater is not the same thing as a final groundwater certificate. A water right under a permit to appropriate water is not a perfected water right. A permit to withdraw public groundwaters authorizes the holder to appropriate public waters. RCW 90.44.050. Applications for permits and permits issued pursuant to such applications are governed by provisions in the surface water code. RCW 90.44.060. A holder's right under a permit to appropriate water is an inchoate right, which is " 'an incomplete appropriative right in good standing' " which " 'remains in good standing so long as the requirements of law are being fulfilled.' " *Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 596, 957 P.2d 1241 (1998) (quoting 1 WELLS A. HUTCHINS, WATER RIGHTS LAWS IN THE NINETEEN WESTERN STATES 226 (1971)). Appropriations of groundwater must comply with surface water code provisions expressly incorporated into the groundwater code. RCW 90.44.060. Inchoate rights are expressly recognized in the surface water code, which provides that nothing in the chapter "shall operate to effect an impairment of any inchoate right to divert and use water while the application of the water in question to a beneficial use is being prosecuted with reasonable diligence." RCW 90.03.460.

By expressly allowing amendment of a *permit*, RCW 90.44.100 plainly contemplates that an unperfected water right may be involved. It follows that water may not actually have been beneficially used. Thus, unlike RCW 90.03.380, which requires beneficial use of water before a change may be approved, RCW 90.44.100 expressly allows for amendment where water has not actually been applied to beneficial use. Beneficial use is not a prerequisite to an amendment under RCW 90.44.100 where unperfected rights under a groundwater permit are concerned.

As the Department correctly points out, however, RCW 90.44.100 does not authorize amendments for changes in *purpose* of use. Further, other statutes govern appropriation, RCW 90.03.250 to .340 (incorporated into groundwater code under RCW 90.44.060), and require diligence in

constructing water systems and application of water to beneficial use within a reasonable time. Given these statutory limitations, RCW 90.44.100 cannot be used to speculate in water rights even though amendment is allowed where unperfected rights are involved.

RCW 90.44.100 facilitates appropriation of groundwater under a permit. A holder of an appropriative right to withdraw groundwater may sink a well in the location stated in the permit application, but discover it provides no water. Another location on the property is found which is likely to provide ample water to satisfy the appropriative right. RCW 90.44.100 authorizes a change in well location in these circumstances without affecting the permit holder's priority date.

Changes in well location(s), or the manner or place of use of the water, i.e., changes permitted under RCW 90.44.100, do not alter the original project or the quantity of water needed. As the Department points out, RCW 90.44.100 allows flexibility in the physical location and means of withdrawal so that permit holders can beneficially use the groundwater they are entitled to appropriate under their permits. However, the flexibility is not unlimited. The statute places a number of conditions on additional or replacement wells including, among other things, that the same body of public groundwater must be tapped, that the original right may not be enlarged, and that the change permitted by amendment must not impair the existing rights of other water users. RCW 90.44.100.[5]

■ In addition, under the version of the statute in effect when R.D. Merrill's application was made, as well as under the current statute insofar as changes in well location (as here) are concerned, amendment shall be issued only after notice and findings as in the case of the original applica-

---

[5]Before amendment in 1997, RCW 90.44.100 provided that an application for amendment had to be made in the case of additional or replacement wells at the same location or a new location. As amended, the statute provides that if the location is not changed, an application for an amendment is not required, provided that certain conditions are satisfied. LAWS OF 1997, ch. 316, § 2.

tion. Former RCW 90.44.100; LAWS OF 1997, ch. 316, § 2. This means that findings must be made that water is available for a beneficial use, that the appropriation will not impair existing rights, and that appropriation will not be detrimental to the public welfare. RCW 90.03.290 (incorporated by reference in RCW 90.44 under RCW 90.44.060).

The next question is whether the statutory conditions were met in this case. The chief dispute is whether, at the time amendment is sought, the Department must find that water is then available for appropriation, or whether its determination of availability should be based upon the time the holder applied for the original permit.

The statute states that "upon the issuance by the department of an amendment to the appropriate permit or certificate of groundwater right, the holder of a valid right to withdraw public groundwaters may, *without losing the holder's priority of right*, construct wells . . . ." RCW 90.44.100 (emphasis added). An applicant's priority date for a water right which has been perfected in accord with law relates back to the date of application for the permit. RCW 90.03.340 (incorporated into groundwater code by RCW 90.44.060); *Hillis v. Department of Ecology*, 131 Wn.2d 373, 384-85, 932 P.2d 139 (1997). Whether water is available for other appropriation after that date will not affect the holder's right. By providing that priority is maintained after amendment, RCW 90.44.100 evidences legislative intent that the time for determining the availability of water subject to appropriation is the time a permit is applied for.[6] RCW 90.44.100 has been satisfied in this case.

Finally, on this issue, the Department maintains that RCW 90.44.100 is a narrow exception to the transfer and change provisions of RCW 90.03.380, and urges that it al-

---

[6]Plaintiffs also maintain that the Department failed to consider whether any threat of detriment to the public welfare would occur as a result of amendment to the groundwater permits under RCW 90.44.100. *See* RCW 90.03.290 (relating to findings required in the case of an original permit). The Department concluded, however, that the proposed changes sought by R.D. Merrill would not be contrary to the public interest. Ex. R-13, at 8.

lows for a change in an unperfected right only where some type of hydrologic or engineering difficulty is encountered. However, nothing in the statute indicates such a narrow reach.

Moreover, the narrow reading of the statute urged by the Department is not necessary to avoid conflict with RCW 90.03.380. The perceived conflict arises because RCW 90.03.380 requires that water be applied to beneficial use before a transfer or change can be approved while RCW 90.44.100 does not mention beneficial use. As explained, beneficial use is not a prerequisite to amendment where a permit is concerned, because an unperfected water right is by definition involved. There is no conflict, because RCW 90.03.380's beneficial use requirement means that unperfected rights are not encompassed within RCW 90.03.380. Insofar as RCW 90.44.100 allows amendment to a final certificate of groundwater right, as noted, a certificate only issues once the right has been perfected, i.e., water has been applied to beneficial use.[7]

We uphold the Board's affirmance of the Department's approval of changes in the unperfected groundwater permits.

## Public trust doctrine

■ Plaintiff OWL argues that the Department's decisions in this case violate the public trust doctrine. The court in *Rettkowski* noted two problems with applying the public trust doctrine to water law issues. First, we have never held that the doctrine applies to nonnavigable waters

---

[7]If, as the Department suggests, hydrologic or engineering difficulties are encountered which prevent beneficial use of water after a final certificate of groundwater right has been issued, for example, where a well "runs dry," the resulting failure to actually apply water to beneficial use before amendment is sought may be excused. The statutory relinquishment statutes evidence legislative intent that that loss of a water right, *and its priority*, not occur where unavailability of water prevents beneficial use. For example, RCW 90.14.160-.180 define five years of nonuse as the *voluntary* failure to beneficially use the water right. Further, RCW 90.14.140(1)(a) establishes that sufficient cause precluding relinquishment for nonuse exists where there is drought or unavailability of water.

134

or groundwater. 122 Wn.2d at 232. Second, the duty devolves upon the State, not any particular agency. The Department's enabling statute does not grant it authority to assume the public trust duties of the state. *Id.* The court then observed that the issue before it involved the Department's regulatory authority and the public trust doctrine could provide no guidance as to the Department's authority because "[t]hat guidance . . . is found only in the Water Code." *Id.* at 233.

■ We adhere to this analysis. Without question, the state water codes contain numerous provisions intended to protect public interests. However, the public trust doctrine does not serve as an independent source of authority for the Department to use in its decision-making apart from the provisions in the water codes.

Plaintiffs urge, however, that the public trust doctrine should be used as a canon of construction in interpreting the state water code provisions. The state statutes contain numerous provisions representing legislative policy on water use and water users' rights. For example, RCW 90.03.005 states that

> [i]t is the policy of this state to promote the use of public waters in a fashion which provides for obtaining maximum net benefits arising from both diversionary uses of the state's public waters and the retention of waters within streams and lakes in sufficient quantity and quality to protect instream and natural values and rights.

Here, resort to the public trust doctrine as an additional canon of construction is not necessary in light of the specific provisions at issue and the water law policies expressed in the state water codes.

### Whether Wilson irrigation right perfected

■ Plaintiffs contend that the Wilson irrigation right was never perfected and therefore is not subject to transfer or change under RCW 90.03.380. The Board held that the right had not been perfected. The superior court reversed.

We uphold the Board's determination because substantial evidence supports its factual determinations which support its conclusion that the right was never perfected. The superior court improperly substituted its own factual determinations in reaching its opposite conclusion.

On appeal from a decision of the Board, the superior court must uphold agency findings unless "[t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court . . . ." RCW 34.05.570(3)(e). Agency findings on factual matters are entitled to great deference. *Penick v. Employment Sec. Dep't*, 82 Wn. App. 30, 37, 917 P.2d 136 (1996).

The Board found: The Wilson irrigation right is based upon a 1915 notice of water right which described a point of diversion on Early Winters Creek, just below the diversion for the Early Winters Ditch Company ditch which begins at the creek and runs along and past the western boundary of the homestead property allegedly irrigated under the Wilson irrigation right. A homestead survey of this property in 1917 does not indicate a separate diversion ditch from the ditch company's ditch, and later assessor records similarly do not indicate any such ditch. Jack Wilson used diverted water from the ditch company's ditch to irrigate 10 acres of pasture. However, no evidence indicates any water was diverted under the 1915 notice and put to beneficial use. Although conflicting evidence was presented, Wilson possibly used water under the ditch company's claim, rather than under the 1915 notice. Testimony concerning the chain of title to the homestead property and the ditch company partnership agreement indicated no shares were held in the ditch company. However, the notice of water right for the ditch company recorded in 1907 and the company's 1974 registration form indicated that the homestead property was part of the land where the ditch company's right was to be used. Further, evidence was presented that Wilson early during his ownership paid for use of the ditch company's ditch and later acquired ditch company shares to irrigate another piece of property.

5 Finding of Fact at 9, No. VI (*Knight v. Department of Ecology*, Pollution Control Hearings Board (PCHB) No. 94-61, 1995 WL 878984 (Apr. 26, 1995)). All of these findings are supported by substantial evidence in the record.

The superior court said, however, that the owners of the homestead property claimed a right independent of the ditch company right, conveyed the water through the ditch company's ditch, and beneficially applied the water to the land. The court also said that the owners of the property did not claim any other right for that purpose, and no owner of the property ever owned shares in the ditch company for purposes of irrigating the homestead property.

The problem with the superior court's "findings" is that the court made its own findings despite substantial evidence supporting the Board's findings. Further, the superior court drew the conclusion that the owners of the property must have been using their own claimed right because, the court reasoned, they had no right to use the ditch company's water. As the Board found, though, there was conflicting evidence. Regardless of whether the owners of the property owned shares in the ditch company, the ditch company's claims included irrigation water for the homestead property, and no separate diversion works were constructed under the 1915 notice, even though that notice expressly said that a separate diversion would be made. The superior court failed to defer to the agency's factual determinations as it should have.

The Board's legal conclusion that the Wilson irrigation right was not perfected is supported by its findings. At the time this water right was claimed, perfected surface water rights for irrigation use could be established under 1891 legislation by posting a notice of claim at the proposed point of diversion, filing a copy with the county auditor, commencing the work associated with the notice within prescribed times, and diligently completing the work. Charles B. Roe, Jr. & Peter R. Anderson, *Water Law, in* 1C Kelly Kunsch Washington Practice: Methods of Practice § 91.6 (4th ed. 1997) (discussing Laws of 1891, ch. 142).

"[S]trict compliance" with the requirements was necessary, and "a failure to comply [with the requirements] deprive[d] the appropriator of the right to the use of the water as against a subsequent appropriator . . . ." LAWS OF 1891, ch. 142, § 4.

Perfection of a water right could also occur in accordance with community custom, requiring "(1) an intent to appropriate, (2) implementation of that intent by an actual diversion of public waters, and (3) an application of the diverted water to a beneficial use within a reasonable time based upon the concept of due (or reasonable) diligence." Roe & Anderson, *supra*, § 91.8, at 330 (discussing appropriation predating the 1917 water code).

The evidence does not establish that there was an actual diversion of water under the claimed right nor that water diverted under the claimed right was used to irrigate the homestead property. While it may be possible for owners of water rights to make a joint diversion, *see Jurupa Ditch Co. v. San Bernardino County*, 256 Cal. App. 2d 35, 63 Cal. Rptr. 764 (1967), here there is no evidence that a joint diversion was intended; to the contrary, the 1915 notice provided that a separate diversion would be made. There is no evidence that any separate diversion was ever constructed. The evidence thus indicates that intent to appropriate water under the 1915 notice was not carried out. The claimed right was never perfected in accord with either the 1891 statutes or community custom.

The superior court held, though, that the Board erred in applying the law, reasoning that application of water to beneficial use is the important consideration and that the means of diversion are incidental. First, the court's statement of the law does not answer the problem that the evidence does not adequately support the proposition that water under the 1915 notice was ever diverted and applied to beneficial use, regardless of the means of diversion. Second, insofar as water rights claimed prior to the 1917 water code are concerned, diversion was, as noted above, a key

requirement of a perfected water right.[8] Third, the case relied on by the superior court for the principle that diversion is only an incidental matter does not support the proposition. In that case the court said that "[a]ppropriation of water consists in the intention, accompanied by reasonable diligence, to use the water for the purposes originally contemplated *at the time of its diversion." Offield v. Ish*, 21 Wash. 277, 280-81, 57 P. 809 (1899) (emphasis added). The court then explained that the fact that the point of diversion may have been changed does not affect the right. *Id.* It was in that context that the court said "[t]he right to use the water is the essence of appropriation; the means by which it is done are incidental." *Id. Offield* actually involved an already perfected right and later changes in the point of diversion. In fact, the case was later cited for the proposition that "the point of diversion may be changed and not affect the right to the entire appropriation." *In re Water Rights in Ahtanum Creek*, 139 Wash. 84, 100, 245 P. 758 (1926). That rule, the court further noted in *Ahtanum Creek*, is now embodied in RCW 90.03.380, which concerns transfers and changes of water rights, *not* perfection of such rights. *Id.* (citing LAWS OF 1917, ch. 117, § 39 (now RCW 90.03.380)). The holding in *Offield* does not involve the question of perfection of a pre-1917 code right and the superior court erroneously relied upon it to overturn the Board.

We uphold the Board's determination that the Wilson irrigation right was not perfected and that no change of right is permitted under RCW 90.03.380 because no valid right existed to change.

---

[8]Where permitting statutes prescribe the way in which water is to be appropriated, actual diversion may not be required depending upon the statutory provisions. *See, e.g., State v. Morros*, 104 Nev. 709, 713, 766 P.2d 263 (1988). In Washington, even under the 1917 water code, diversion still retains importance. The application for a permit to appropriate water must provide "the location and description of the proposed ditch, canal, or other work, the time within which the completion of the construction and the time for the complete application of the water to the proposed use." RCW 90.03.260.

Summary judgment

In light of our holdings as to the four change applications discussed above, our discussion of the questions of abandonment or relinquishment, and quantification of the amount of a water right subject to transfer or change under RCW 90.03.380 primarily concerns the application to change the Willis irrigation right. The Board ruled on R.D. Merrill's motion for partial summary judgment that plaintiffs had the burden of establishing abandonment or relinquishment and had failed to present sufficient evidence. That ruling was erroneous. The issue was not before the Board on the summary judgment motion and plaintiffs have not had a fair opportunity to present evidence on the issue. The record shows that material issues of fact remain on the issues of abandonment and relinquishment as to the Willis irrigation right, and therefore summary judgment was improperly granted in favor of defendant R.D. Merrill.

Statutory exceptions to relinquishment

Under RCW 90.14, a water right is subject to relinquishment in whole or in part if, without sufficient cause, the holder voluntarily fails to beneficially use the right or a portion of the right for a period of five years. RCW 90.14.130; RCW 90.14.160-.180. RCW 90.14.140 defines sufficient cause for nonuse. R.D. Merrill relies upon two statutory exceptions to relinquishment, arguing that "[t]he operation of legal proceedings" is sufficient cause for nonuse, RCW 90.14.140(1)(d), and that no relinquishment occurred, notwithstanding RCW 90.14.130 through .180, because its rights were claimed "for a determined future development to take place either within fifteen years of July 1, 1967 [the effective date of the relinquishment statutes], or the most recent beneficial use of the water right, whichever date is later[,]" RCW 90.14.140(2)(c).

Material issues of fact remain regarding applicability of the exceptions in RCW 90.14.140.

In addressing the exceptions to relinquishment, it is important to bear in mind that generally exceptions to statutory provisions are narrowly construed in order to give effect to legislative intent underlying the general provisions. *State v. Williams*, 94 Wn.2d 531, 548, 617 P.2d 1012, 24 A.L.R.4TH 1191 (1980); *Olson v. University of Wash.*, 89 Wn.2d 558, 562, 573 P.2d 1308 (1978); *Hall v. Corporation of Catholic Archbishop*, 80 Wn.2d 797, 801, 498 P.2d 844 (1972). The purpose of the relinquishment statutes is "to cause a return to the state of any water rights which are no longer exercised by putting said waters to beneficial use." RCW 90.14.010. RCW 90.14.020(3) provides that "[a] strong beneficial use requirement as a condition precedent to the continued ownership of a right to withdraw or divert water is essential to the orderly development of the state . . . ." RCW 90.14.160 through .180 state that where water rights have not been beneficially used for five continuous years, or have been abandoned, "said right or portion thereof shall revert to the state, and the waters affected by said right shall become available for appropriation . . . ." Given these purpose and policy statements, and the express provisions of RCW 90.14.160 through .180, the Legislature intended that water be beneficially used, and, if not, that water rights be returned to the state so that the water will be available for appropriation by others who will put the water to beneficial use.

It is also important to keep in mind that while the party asserting abandonment of a water right or statutory relinquishment of the right has the burden of proving abandonment or nonuse, R.D. Merrill, as the party claiming sufficient cause for nonuse, has the "burden of showing how its nonuse falls under one of the narrow categories in RCW 90.14.140." *Department of Ecology v. Acquavella*, 131 Wn.2d 746, 758, 935 P.2d 595 (1997); *see Hall*, 80 Wn.2d at 801-02 (burden of proof of facts essential to invocation of a statutory exception is on the proponent); *In re Petition of*

*North Laramie Land Co.*, 605 P.2d 367 (Wyo. 1980) (burden of proof of applicability of exception excusing nonuse for purposes of statutory forfeiture of water right on party claiming exception); *In re Water Appropriation No. 442A*, 210 Neb. 161, 313 N.W.2d 271 (1981) (same). Thus, regardless of plaintiff's burden of proof on abandonment or relinquishment, R.D. Merrill has the burden of proving that nonuse of the water rights is excused by a statutory exception.

The first exception claimed by R.D. Merrill is that the operation of legal proceedings excused any nonuse of the water rights. RCW 90.14.140(1)(d) provides that sufficient cause exists for nonuse of all or part of the water by the owner of a water right for five consecutive years "as a result of . . . [t]he operation of legal proceedings." R.D. Merrill argues that litigation involving the ability to develop a ski area on federal land adjacent to its land tied up its development plans and constitutes sufficient cause for nonuse. R.D. Merrill points out that the Board has construed "legal proceedings" to mean "all proceedings authorized or sanctioned by law and brought or instituted in a court or legal tribunal for the acquiring of a right or the enforcement of a remedy." Pollution Control Hr'gs Board Second Partial Summ. J. Order, Vol. 4, at 4 (Feb. 3, 1995) (*Knight v. Ecology*, PCHB No. 94-61, at 4 (citing *Attwood v. Department of Ecology*, PCHB No. 82-58, 1983 WL 197279 (Mar. 24, 1983)). While this may be a correct definition of what constitutes a legal proceeding, the fact that a legal proceeding exists involving a water right holder's land or development plans does not in itself compel application of the exception.

RCW 90.14.140(1)(d) requires that nonuse of the water be "the result of" the legal proceedings. As plaintiffs and the Department argue, the "operation of legal proceedings" exception thus requires more than involvement in legal proceedings. Read narrowly to preserve the general statutory provisions, the exception requires that the nonuse of water be attributable to the legal proceedings, i.e.,

that the legal proceedings prevent the use of the water. This approach is in keeping with the general provisions favoring beneficial use of water unless there is some legitimate reason why the water cannot be used. Here, while development plans may have been delayed as a result of the litigation, it is not clear whether beneficial use of the water for other purposes was prevented while the litigation was pending. Because the Board applied the wrong legal standard in determining whether the operation of legal proceedings excused any nonuse of the water, remand for further factual determinations is necessary on this question.

 ██ The second claimed exception is that nonuse does not require relinquishment because the rights were "claimed for a determined future development to take place either within fifteen years of July 1, 1967, or the most recent beneficial use of the water right, whichever date is later . . . ." RCW 90.14.140(2)(c). The statute does not define "determined future development." The Board has interpreted "determined" in accord with the dictionary definition, i.e., " 'to fix conclusively or authoritatively.' " *E.g., Cocking Farms v. Department of Ecology*, PCHB No. 93-251, 1994 WL 905549, at *2 (Conclusion of Law 3) (Feb. 14, 1994) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 616 (1971)).[9] In accord with the Board's interpretation, the Department reasons that the water right holder must have a firm definitive plan in order to fall within the exception. The Board has also interpreted the exception to mean that in order to be fixed conclusively or authoritatively, the future development must, at the least, be fixed prior to the end of the five year period of nonuse. *Georgia Manor Water Ass'n v. Department of Ecology*, PCHB No. 93-68, 1994 WL 905585 (Nov. 9, 1994).

Under the error of law standard of RCW 34.05.570(3)(d),

---

[9]The Pollution Control Hearings Board's decisions are cited here to show the agency interpretation of RCW 90.14.140(2)(c). As the Department acknowledges, the PCHB decisions do not provide precedent for the court to follow.

a court may substitute its interpretation of the law for that of the agency. *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 458, 938 P.2d 827 (1997). However, the agency's interpretation accords with the ordinary dictionary definition of the term and, therefore, correctly states the law. *See State v. Chester*, 133 Wn.2d 15, 22, 940 P.2d 1374 (1997) ("[i]n the absence of a specific statutory definition, words in a statute are given their common law or ordinary meaning"; "[a] nontechnical word may be given its dictionary definition.")

The Board's prior interpretation of the statute as requiring that the future development be determined before the expiration of five years of nonuse also comports with the relinquishment statutes. RCW 90.14.140(2)(c) refers to a "determined future development to take place . . . within fifteen years[,]" thus contemplating (1) a fixed determination—a firm definitive plan (2) of a future development which will take place within 15 years—encompassing the possibility of future development which may occur after the five years' nonuse period. While the actual development need not occur within the five years' nonuse period, there must be fixed development plans within that period. First, the statute refers to a plan which is already determined ("determined"). Second, any other reading of the provision would defeat the general relinquishment provisions, because a water right holder whose rights are subject to relinquishment for five years' nonuse could otherwise decide *after* five continuous years of nonuse to plan a future development in order to avoid relinquishment. Such a result is at odds with the obvious purpose of the statutory provision to avoid relinquishment only where fixed development plans will take longer than five years to come to fruition.

Here, there is a genuine issue of material fact as to whether there was any conclusively or authoritatively fixed development plans within five years of July 1, 1967. R.D. Merrill points to evidence of feasibility studies in 1970. However, investigation of whether development is feasible

is not a fixed, definitive plan. Instead it is preliminary to a fixed development plan. Other evidence to the effect that property purchases were made in 1972 is also insufficient to hold that a determined future development was planned as of July 1, 1972, because the evidence does not disclose *when* in 1972 any purchases were made. If purchases were later than June 30, 1972, then five years had already passed. If, as plaintiffs contend, those were years of continuous nonuse (in whole or in part), relinquishment had already occurred.

Further, while the Department claims the evidence shows that the water rights were beneficially used later than July 1, 1972, thus making last beneficial use the relevant time period from which the 5 and 15 year periods ran, plaintiff Burkhart quite correctly points out that the Department relies on evidence produced during the hearing before the Board after the issues of abandonment and statutory relinquishment had already been foreclosed by the Board's summary judgment. At the time of the hearing, plaintiffs were not put to the burden of proving abandonment or statutory relinquishment, and in fact were not allowed to pursue the issues, and nonuse for purposes of the relinquishment statute was not at issue. Disputed material issues of fact are raised by materials submitted on the issue of nonuse when plaintiffs sought reconsideration of the second partial summary judgment (after the Board ruled on the issue despite the fact it was not raised by the partial summary judgment motion). (The Board denied plaintiffs' motion for reconsideration of the second order granting partial summary judgment.) Thus, whether the time of last beneficial use is the relevant time depends upon resolution of material disputed facts.

We hold that there remain disputed issues of material fact as to whether five years of nonuse occurred before any conclusively or authoritatively fixed development plans were made. Therefore, partial summary judgment on the "determined future development" exception was improper.

■ As the Department and plaintiff Burkhart contend,

the "determined future development" exception additionally requires that the development plan be effected within 15 years (either of July 1, 1967, or the latest beneficial use of water). The provision states the right must be claimed for a determined future development "to take place" within 15 years. RCW 90.14.140(2)(c). A legal issue is raised as to what is required within the 15 year period. Completion of development within 15 years should not be required because some large-scale projects will require a lengthy development period, particularly where extensive environmental review and construction are involved, and RCW 90.14.140(2)(c) is clearly not intended to provide an exception only for small projects. However, there must be some development within the 15 year period in order for the right to remain valid.

Burkhart maintains the development must be actual physical development. R.D. Merrill points, in contrast, to *Sheep Mountain Cattle Co. v. Department of Ecology*, 45 Wn. App. 427, 726 P.2d 55 (1986), where the court listed certain facts as supporting application of the future development exception. The facts listed, with the exception of the fact that some irrigation pipe had been laid on a portion of the land, relate to planning and investigation, rather than actual physical development. For two reasons, *Sheep Mountain* provides little guidance. First, the issue there was whether the water right holder had been provided due process before the Department issued an order declaring the right had reverted to the state under the relinquishment statutes. The court held that the holder had been deprived of notice and the opportunity to be heard. The discussion of whether the determined future development exception might apply was dicta. Second, the facts the court recited in *Sheep Mountain* clearly supported finding that a conclusively or authoritatively fixed development plan was in place, which was all that was necessary at the time because 15 years from July 1, 1967, had not yet passed— the relinquishment order was dated May 21, 1981—and the holder would still have had time to commence physical development if that were required.

We conclude that some affirmative steps toward realization of the fixed development plans must occur within the 15-year period. Among factors which may serve as objective evidence indicating actual implementation are: applying for necessary county and other permits, notifying the Department of plans to use the water right in connection with a future development, actual physical development consistent with the fixed development plans such as clearing land or commencing construction, and acquiring additional lands, rights, or materials needed to implement the determined development plan. We do not intend an exhaustive list, nor to suggest that any of these factors are dispositive in a given case. However, whatever steps are taken to implement the development plans, the water right holder must proceed in the exercise of reasonable due diligence within the 15-year period.

### Abandonment and relinquishment

 In ruling on R.D. Merrill's motion for partial summary judgment, the Board also reasoned that plaintiffs had the burden of establishing abandonment or statutory relinquishment and had failed to present evidence supporting their claim that the water rights had not been used. This ruling was erroneous because the issue of nonuse was not raised in R.D. Merrill's partial summary judgment motion and therefore the Board erred in deciding the issues of abandonment and statutory relinquishment on summary judgment.

R.D. Merrill's motion for partial summary judgment noted plaintiffs' assertion that water rights approved for changes had been abandoned or relinquished by Merrill. R.D. Merrill's Mot. for Partial Summ. J., at 12 (Jan. 3, 1995). (However, *plaintiffs* did *not* move for summary judgment on this issue.) R.D. Merrill's motion then states: "In fact, *as to any periods of non-use* after 1967, these rights have neither been abandoned nor relinquished by Merrill." *Id.* (emphasis added). The motion then sought summary judgment on the basis of the two exceptions to relinquish-

ment claimed by R.D. Merrill. *Id.* at 13-15. Thus, defendant's motion maintained that *regardless* of whether there was any nonuse, the two exceptions applied and excused any nonuse. The motion did not discuss whether nonuse occurred, and did not raise nonuse as an issue.[10]

Even if the issue of nonuse had been raised in R.D. Merrill's reply brief, the issue would still not be a proper basis for summary judgment. First, allowing the moving party to raise new issues in rebuttal materials generally gives the moving party no opportunity to respond. *White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 168, 810 P.2d 4 (1991). Second, nothing in CR 56(c) allows the raising of additional issues other than in the motion and memorandum in support of the motion. *Id.*

In any event, it is difficult to agree that R.D. Merrill attempted to raise the issue of nonuse in its reply memorandum. The reply brief stated that R.D. Merrill "moved for partial summary judgment as to Issue No. 3 [regarding plaintiffs' claims of abandonment and relinquishment] . . . requesting a determination by this Board that *any periods* of non-use after 1967 could not constitute relinquishment or abandonment of the water rights at issue . . . ." Merrill's Reply Mem. in Supp. of Summ. J., at 4 (Jan. 23, 1995) (emphasis added). The reply memorandum then argued (1) that plaintiffs bore the burden of proof on the issues of abandonment and relinquishment and that in response to defendant's partial summary judgment motion plaintiffs had failed to put forward sufficient evidence of nonuse; and (2) that plaintiffs had failed to sufficiently controvert evidence which defendant presented in favor of application of

---

[10]R.D. Merrill argues that the issue of nonuse was "inherent" in its motion. The issue was not inherent in R.D. Merrill's partial summary judgment motion. The Board could rule on whether the exceptions excused any nonuse without having to rule on whether there were disputed material facts as to whether five years' nonuse occurred. Moreover, a party responding to a summary judgment motion should not have to guess what additional issues may be "inherent" in the motion. "[I]t is incumbent upon the moving party to determine what issues are susceptible to resolution by summary judgment, and to clearly state in its opening papers those issues upon which summary judgment is sought." *White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 169, 810 P.2d 4 (1991).

the two exceptions to relinquishment which it claimed. *Id.* at 5-7. Therefore, even if an issue on which summary judgment is sought could be raised in a reply memorandum, R.D. Merrill did not raise the issue of nonuse. Rather, R.D. Merrill tied its discussion of plaintiffs' "failure" to provide sufficient evidence on nonuse *directly to* the issues it raised *in the partial summary judgment motion*, and said that plaintiffs' response was inadequate to overcome the motion. R.D. Merrill was not purporting to raise in the reply memorandum a new issue on which summary judgment should be granted, but instead referred to the grounds for summary judgment raised in the motion itself.

The fact that plaintiffs bear the burden of proof on the issues of abandonment and statutory relinquishment does not make any difference here. First, since the issue of nonuse was not raised in the summary judgment motion, plaintiffs had no reason at all to provide evidence of nonuse in response. Second, as explained above, on the issues which R.D. Merrill actually raised in its partial summary judgment motion, applicability of the two claimed exceptions to relinquishment, R.D. Merrill bore the burden of proof.

Finally, R.D. Merrill argues that if error occurred when the Board considered the issue of nonuse, the error was harmless. We disagree. Initially, we have serious doubts that a harmless error analysis should apply here at all. It is unfair to grant the extraordinary relief of summary judgment without allowing the nonmoving party the benefit of a clear opportunity to know on what grounds summary judgment is sought. In addition, plaintiffs submitted materials to the Board following R.D. Merrill's reply and again upon their own motion for reconsideration of the Board's second partial summary judgment ruling which raise material issues of fact as to nonuse. (The Board denied that motion for reconsideration.)

The Board erred in granting summary judgment on the issues of abandonment and relinquishment.

We reverse the Board's partial summary judgment rul-

ings on the issues of abandonment and statutory relinquishment, including applicability of the exceptions to statutory relinquishment, and remand for further proceedings. The abandonment and relinquishment issues are relevant to the change sought in the Willis irrigation right (not to be confused with the Wilson irrigation right).

Conclusion

For the reasons stated in this opinion, we affirm the Board's decision upholding the changes in the Vane water right and in the two unperfected groundwater rights. We also affirm the Board's determination that the Wilson irrigation right was never perfected and accordingly cannot be changed under RCW 90.03.380. We reverse the Board's grant of partial summary judgment on the issues of abandonment and statutory relinquishment.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.

Reconsideration denied February 25, 1999.