[No. 22648-4-III. Division Three. December 16, 2004.]

THE CITY OF WEST RICHLAND, ET AL., *Respondents*, v. THE DEPARTMENT OF ECOLOGY, ET AL., *Appellants*.

*Christine O. Gregoire, Attorney General,* and *Maia D. Bellon, Assistant,* for appellants.

*James L. Buchal, Terry M. Tanner, Jr.,* and *Brian J. Iller,* for respondents.

¶1 BROWN, J. — As did the Benton County Superior Court, we now review a summary judgment of the Pollution Control Hearings Board (PCHB) granted in favor of the Department of Ecology (DOE) against the city of West Richland (City) and the Benton County Water Conservancy Board (BCWCB). The PCHB summarily rejected the City's proposed transfer of John Michel's unperfected water rights he acquired under the Family Farm Water Act, chapter 90.66 RCW (FFWA). The PCHB reasoned the attempted transfer amounted to a prohibited change in purpose of use from agricultural to municipal. The Superior Court disagreed with the PCHB and reversed. Considering mainly RCW 90.44.100 and *R.D. Merrill Co. v. Pollution Control Hearings Board*, 137 Wn.2d 118, 129, 969 P.2d 458 (1999) (*Merrill*), we hold RCW 90.66.065 does not allow the proposed change in purpose of use. Further, we hold the Superior Court lacked jurisdiction to stay Mr. Michel's water permit development schedules. Accordingly, we reverse the Superior Court and affirm the PCHB.

## FACTS

¶2 In November 1990, Mr. Michel applied to DOE under the FFWA for two groundwater permits for his farmland in Benton County. In August 1993, DOE issued family farm permits providing for "irrigation during irrigation season [and] continuous single domestic supply. . . ." Clerk's Papers (CP) at 30, 33. Development schedules specified construction beginning on April 1, 1994, and completion April 1, 1996. In October 2000, DOE issued a show cause order to determine why Mr. Michel's permits should not be cancelled due to his failure to meet extended development schedules.

¶3 In December 2000, before Mr. Michel responded to the show cause order, the BCWCB favorably acted on the City's request to transfer Mr. Michel's permit rights to it for a different use by the City as municipal water supply, mainly lawn irrigation. Further, the BCWCB extended the development schedule completion to January 1, 2005. In February 2001, DOE reversed the BCWCB decisions.

¶4 In October 2001, DOE canceled Mr. Michel's permits for failure to meet his development deadlines. In November 2001, Mr. Michel appealed the cancellation order to the PCHB (*Michel v. Dep't of Ecology*, No. 01–183, Pollution Control Hr'gs Bd.). On February 4, 2003, Mr. Michel and DOE settled the PCHB appeal, entering a Stipulation and Agreed order of Dismissal. The settlement required Mr. Michel to develop his two inchoate groundwater rights by January 1, 2004 and January 1, 2005. Mr. Michel did not appeal further.

¶5 In March 2003, the City, without Mr. Michel's participation, appealed DOE's reversal of the BCWCB decisions to the PCHB (*City of West Richland v. Dep't of Ecology*, No. 01-033, PCHB). The BCWCB intervened. Three issues emerged:

1. Whether RCW 90.44.100 allows the proposed change when the permit proposed for change is an inchoate ground water permit.
2. Whether the proposed water right change would alter the intent of the original application such that the proposed change is not allowed under the Supreme Court's holding in [*R.D.*] *Merrill* [*Co.*] *v. Pollution Control Hearings Board*, 137 Wn.2d 118, 130-31, 969 P.2d 458 (1999).
3. Whether agricultural purposes of use authorized under a family farm permit (conditioned under RCW 90.66) may be changed to the use proposed by the City of West Richland.

Administrative R. 18, at 3.

¶6 In August 2003, the PCHB granted summary judgment to DOE, holding RCW 90.44.100 and *Merrill* pre-

cluded the transfer of unperfected water rights because a change in purpose existed, a change from agricultural irrigation on a family farm to watering residential lawns and gardens. The PCHB did not consider or rule on any aspects of Mr. Michel's development schedule.

¶7 The City and the BCWCB then appealed *City of West Richland v. Department of Ecology*, No. 01-033 PCHB Summary Judgment and Order (Wash. Aug 4, 2003), to Benton County Superior Court. On November 4, 2003, the Court orally announced summary judgment reversing the PCHB. On November 14, before entry of the summary judgment order, the City moved to stay the development schedule for Mr. Michel's permits from the settlement with DOE in *Michel v. Department of Ecology*, PCHB No. 01-183. Concurrently, Mr. Michel moved to intervene.

¶8 Mr. Michel declared he had agreed to lease his two groundwater permits to the City and was "currently finalizing the details" of the lease to "formalize this agreement." CP at 102. Mr. Michel declared he attempted to "assign" his permit rights in 2000 to the City, but while the matter was before the BCWCB, DOE issued its show cause order to cancel his permits and later did cancel them. CP at 102. Mr. Michel believed he could not transfer his permits to the City because DOE asserted it did not have the authority to approve a "change of purpose." CP at 102. Without consulting the City, Mr. Michel agreed to the new development schedule for his "own use" in settling *Michel v. Department of Ecology*, PCHB No. 01-183. CP at 103.

¶9 Mr. Michel declared he was "informed" after the court's oral ruling that the City may lease the permits under 2001 amendments to the FFWA and "would never have entered into the Settlement Agreement's development provisions, because those provisions were not appropriate for the City." CP at 103. Mr. Michel declared he did not want to "waste at least $350,000.00 drilling a well that may never be used." CP at 103-04. The well would be "abandoned" when the City's lease "is approved," and he would lose "the cost of drilling that useless well as part of the lease agreement. . . ." CP at 104.

¶10 On November 24, 2003, the court entered its summary judgment order and orally granted the development schedule stay in *Michel v. Department of Ecology*, PCHB No. 01-183. The court reasoned, "RCW 90.66.065(2)(b) provides [DOE] with the authority to grant a change to the purpose of use of the water right permits held by Mr. Michel, if all other statutory criteria are met, and RCW 90.44.100 does not foreclose such authority." CP at 12. The court ordered that due to inconsistent provisions of the PCHB summary judgment order "be set aside." *Id*. On December 5, 2003, the court entered its written order granting intervention and staying the permit development schedule. DOE appealed.

## ANALYSIS

### A. Summary Judgment Order

¶11 The issue is whether, considering RCW 90.44.100 and *Merrill*, the PCHB erred in granting summary judgment in favor of DOE and concluding RCW 90.66.065(2)(b) did not allow the City's proposed change in purpose of use. DOE contends the "purpose of use" of Mr. Michel's family farm water permits cannot be changed to municipal use under RCW 90.44.100 and the FFWA change provisions in RCW 90.66.065.

¶12 Our review of agency orders is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 589, 957 P.2d 1241 (1998). "Agency action may be reversed where the agency has erroneously interpreted or applied the law, the agency's order is not supported by substantial evidence, or the agency's decision is arbitrary and capricious." RCW 34.05.570(3); *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 76-77, 11 P.3d 726 (2000). We review the PCHB record de novo. *Postema*, 142 Wn.2d at 77.

¶13 Like the superior court, we may substitute our interpretation of law for the agency's interpretation. *Id*. The burden of establishing the invalidity of agency action is

on the party seeking invalidity. RCW 34.05.570(1)(a); 142 Wn.2d at 77. Agency interpretations (here, that of the PCHB) may be given "great weight" when a statute is within the agency's special expertise, but "[u]ltimately, it is for the court to determine the meaning and purpose of a statute." *Id.* (citing *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998)).

■ ¶14 As policy, the FFWA was enacted to "conserve and use wisely" public waters, both ground and surface, and to maximize the "benefit" to our citizens when using public water. RCW 90.66.030. In "the irrigation of agricultural lands" the "maximum benefits" envisioned will "result from providing for the use of such water on family farms." *Id.* Statutes must be read as a whole and construed so no portion is rendered superfluous. *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 791, 805, 51 P.3d 744 (2002).

■ ¶15 Generally, under the FFWA an inchoate or unperfected water right matures into an appropriative right when the water is put to full beneficial use. *Theodoratus*, 135 Wn.2d at 596. Originally, the FFWA did not allow changes in family farm water rights. *See* RCW 90.66.065 (enacted by LAWS OF 2001, ch. 237, § 23); *see also* FINAL B. REP. (ESHB 1832), 57th Leg., Reg. Sess., at 2, 5-6 (Wash. June 7, 2001). Now "[t]ransfers of water rights established as family farm permits under this chapter may be approved as authorized under [RCW 90.66.065] and under RCW 90.03.380, 90.03.390, or 90.44.100 or chapter 90.80 RCW as appropriate." RCW 90.66.065(1). " 'Transfer' means a transfer, change, or amendment to part or all of a water right authorized under RCW 90.03.380, 90.03.390, or 90.44.100 or chapter 90.80 RCW." RCW 90.66.040(7).

¶16 Three subsections of RCW 90.66.065 ((2)(a), (b), and (c)) detail family farm permit transfer circumstances. Each subsection contains a proviso related to transfer of family farm water permits for use "for agricultural irrigation purposes" and each is limited by RCW 90.66.060(1) and (2). RCW 90.66.065.

¶17 First, a family farm permit may be transferred under RCW 90.66.065(2)(a) "[f]or use for agricultural irrigation purposes" under the limitations of RCW 90.66.060(1) and (2), that relate to gifts, devises, bequests, or debt satisfactions so long as the transferee remains within the definition of a family farm.

¶18 Second, (our main focus) is RCW 90.66.065(2)(b).

A family farm permit may be transferred:

To *any purpose of use* that is a beneficial use of water if the transfer is made exclusively *under a lease agreement*, except that transfers for the use of water for agricultural irrigation purposes shall be limited as provided by RCW 90.66.060(1) and (2).

RCW 90.66.065(2)(b) (emphasis added).

¶19 Third, a family farm permit may be transferred under RCW 90.66.060(2)(c) "[t]o *any purpose* of use that is a beneficial use of water if the water right is for the use of water at a location that is, at the time the transfer is approved, *within the boundaries of an urban growth area*" with the same limitation "that transfers for the use of water for agricultural irrigation purposes shall be limited as provided by RCW 90.66.060(1) and (2)." RCW 90.66-.060(2)(c) (emphasis added).

 ¶20 Generally, RCW 90.03.380 applies to changes made under the water code. RCW 90.03.390 applies specifically to temporary changes. RCW 90.44.100 applies to changes in unperfected ground water rights. Chapter 90.80 RCW applies to changes by *water conservancy boards*. RCW 90.66.065(1) requires that RCW 90.03.380, 90.03.390 and 90.44.100 be examined in the context of transfers "*as appropriate*." RCW 90.66.065(1) (emphasis added). It is appropriate here.

¶21 DOE argues RCW 90.44.100 does not allow the City's proposed change when considered with the FFWA. RCW 90.44.100 partly provides:

After an application to, and upon the issuance by the department of an amendment to the appropriate permit or certificate of ground water right, the holder of a valid right to

withdraw public ground waters may, without losing the holder's priority of right . . . *change the manner or place of use* of the water.

RCW 90.44.100(1) (emphasis added).

¶22 RCW 90.66.065 allows family farm permit transfers before any water has been put to beneficial use. *R.D. Merrill Co. v. Pollution Control Hearings Bd.*, 137 Wn.2d 118, 129, 969 P.2d 458 (1999). RCW 90.44.100 facilitates groundwater appropriations by allowing a change in the "manner of use," even when groundwater rights have not been put to beneficial use. *Merrill*, 137 Wn.2d at 131. RCW 90.03.380 allows a change in the "purpose of use" when water rights have been put to beneficial use. 137 Wn.2d at 130. A change in the "manner of use," as allowed under RCW 90.44.100, is not the same as a change in the "purpose of use," as allowed under RCW 90-.03.380. *See* 137 Wn.2d at 129.

¶23 The Supreme Court has previously analyzed the difference between "purpose of use" and "manner of use" in the context of RCW 90.44.100 and RCW 90.03.380. *Merrill*, 137 Wn.2d at 131. The court found a difference between the two phrases, relating "manner of use" refers solely to changes that "do not alter the original project or the quantity of water needed," such as a change in the means of withdrawal. *Id.* The City contends *Merrill* is dicta because the court ultimately upheld the contested permits. However, when the interpretation is essential to the decision, it is not dicta. *Wagg v. Estate of Dunham*, 146 Wn.2d 63, 73, 42 P.3d 968 (2002).

¶24 In *Merrill*, a developer sought to alter different types of water rights in order to facilitate a "destination ski resort." *Merrill*, 137 Wn.2d at 124-25. The court's analysis of "manner of use" and "purpose of use" as distinctly separate concepts related specifically to two permits not yet put to beneficial use, and the proposed change did not "alter the original project." *Id.* at 131. In contrast, the City's proposal would completely "alter the original project." *Id.* Although indirectly, the *Merrill* court applied the analysis

when upholding the transfers. The analysis of "manner of use" and "purpose of use" was essential to the court's decision. Therefore, it was not dicta. *See Ezell v. Hutson,* 105 Wn. App. 485, 491, 20 P.3d 975 (2001). Even if dicta, the *Merrill* reasoning is persuasive.

¶25 In light of the holding in *Merrill,* "RCW 90.44.100 does not authorize amendments for changes in *purpose* of use." *Merrill,* 137 Wn.2d at 130. In the *Merrill* context of statutory limitations, "RCW 90.44.100 cannot be used to speculate in water rights even though amendment is allowed where unperfected rights are involved." *Id.* at 131. It follows that Mr. Michel may not accommodate the City's purpose of use without risking a valid speculation claim. Indeed, Mr. Michel declares the City's well placement choice does not suit his agricultural purpose of use. Mr. Michel would abandon his scheduled well if the City were successful in securing his rights, resulting in not one drop of water ever being applied to his farmland. Finally, Mr. Michel intended to *assign* his permit rights before shifting to an unexecuted lease theory in an apparent accommodation to the City. Overall, no benefit is intended to Mr. Michel's farmland by the proposed transfer, solely a speculative pecuniary benefit to Mr. Michel.

¶26 Moreover, the legislative intent underlying the 2001 changes to RCW 90.66.065 announced the design to "preserve the agricultural economy of the state by allowing changes of family farm water permits from agricultural irrigation to other agricultural purposes." LAWS OF 2001, ch. 237, intent language of RCW 90.66.065. The City's proposal is not for an agricultural purpose. Further, the legislature intended to allow conversion of family farm water to "urbanizing areas" "consistent with adopted land use plans." *Id.* No land use or urban growth plan is included in our record.

¶27 The legislature intended farmers to benefit from "conservation projects and from temporary leases of their family farm water permits." *Id.* No conservation project is suggested here. The sole reference to a lease is Mr. Michel's

declaration, regarding his intent to agree to a 50 year lease, before the PCHB hearing. The City's proposal to the BCWCB was for an assignment of Mr. Michel's inchoate permits. Moreover, a 50 year lease can hardly be thought temporary considering Mr. Michel's original declared design to assign his rights. Further, leases may be renewed and be durable, but without a lease in our record, the City's argument that the lease is temporary is merely speculative. Lastly, Mr. Michel's declarations regarding well abandonment do not support the City's argument that the intended lease was merely temporary.

¶28 Finally, "outside of urbanizing areas, the legislature intends to preserve farmlands by ensuring that the quantity of water needed to grow the crops historically grown remains with the farm." *Id.* Mr. Michel's farmland is not shown to be urbanizing or within an urban growth area, but without water it will not produce crops. That is contrary to the policy expressed in RCW 90.66.030 and the provisos of RCW 90.66.065(2) designed to preserve "agricultural irrigation purposes."

¶29 Here, the City proposed a change in purpose of use from agricultural irrigation of a family farm to municipal water supply. The change clearly alters the original project. *See Merrill*, 137 Wn.2d at 131. We conclude the proposed change in "purpose of use" is not authorized under RCW 90.44.100. *See id.* Considering RCW 90.66.065(2)(b) and RCW 90.44.100 in light of *Merrill*, we hold the PCHB did not err in granting summary judgment to DOE because RCW 90.66.065(2)(b) does not allow the proposed change in purpose of use proposed by the City.

¶30 In sum, RCW 90.66.065 must be applied with RCW 90.44.100, when applicable as here. Because Mr. Michel's groundwater rights have not been put to beneficial use, RCW 90.44.100 is applicable. RCW 90.44.100 does not authorize the proposed change in "purpose of use" sought by the City. Accordingly, the Superior Court erred, and is reversed. We affirm the PCHB.

## B. Stay

¶31 The issue is whether the superior court erred in granting the stay of permit development guidelines in PCHB No. 01-183 as part of the appeal in *City of West Richland v. Department of Ecology*, No. 01-033, PCHB.

¶32 The court's interpretation of the Administrative Procedure Act is a question of law reviewed de novo. *See Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994). An appeal to superior court from an administrative decision invokes appellate, not general jurisdiction. *Cheek v. Employment Sec. Dep't*, 107 Wn. App. 79, 83, 25 P.3d 481 (2001). To invoke appellate jurisdiction the appealing party must meet all statutory procedural requirements, including filing a petition for review in superior court and serving the petition on all parties. RCW 34.05.550; *Cheek*, 107 Wn. App. at 83 (citing *City of Seattle v. Pub. Employment Relations Comm'n*, 116 Wn.2d 923, 926, 809 P.2d 1377 (1991)). The superior court's jurisdiction is limited to issues raised in the administrative decision below. *King County v. Boundary Review Bd.*, 122 Wn.2d 648, 668-69, 860 P.2d 1024 (1993).

¶33 Here, the superior court lacked jurisdiction to stay the permit development guidelines in *Michel v. Department of Ecology*, No. 01-183, PCHB, because Mr. Michel did not appeal that case. *City of West Richland v. Department of Ecology*, No. 01-033, PCHB, is a separate case. In other words, intervention in *City of West Richland v. Department of Ecology*, No. 01- 033, PCHB, did not invoke superior court appellate juris-diction in *Michel v. Department of Ecology*, No. 01-183, PCHB. The development guideline issue was not addressed by the PCHB in the current appeal. Therefore, we do not reach DOE's contention that even if the court had jurisdiction to grant the stay, the APA stay requirements were not met.

¶34 The Superior Court is reversed. The stay is vacated. The decision of the PCHB is affirmed.

SWEENEY, A.C.J., and KURTZ, J., concur.