[No. 600. Decided January 31, 1889.]

TOWNSEN T. ELLIS AND MARTHA ELLIS v. POMEROY IMPROVEMENT COMPANY.

WATER-COURSES — APPROPRIATION — ESTOPPEL — PUBLIC LANDS.

Water-courses on the public lands of the United States are subject to appropriation by use in accordance with local customs and laws; and vested rights so acquired can not be divested by relation back of a patent granted to one who had preëmpted the land through which the water-course passes, and who did not make final proof until after such appropriation had been made.

One who is present and aids in the appropriation of a water-course, and afterwards sells his interest in the water-rights so acquired, is estopped from asserting any claim to such water-rights under a patent afterwards obtained by him as a preëmptor of the land through which the water-course passes.

*Appeal from District Court, Garfield County.*

Action by the Pomeroy Improvement Company against Townsen T. Ellis and Martha E. Ellis. Judgment for plaintiff, and defendants appeal.

*W. A. George,* for appellants.

*M. F. Gose, Elmon Scott,* and *Allen & Crowley,* for appellee.

The opinion of the court was delivered by

ALLYN, J.—Appellants insist that this is a suit to quiet title to a certain water-right and right-of-way for a water ditch across the north half of the south half of section 32, township 10, north of range 42 east, in Garfield county, and that, possession not being unqualifiedly asserted, the action must abate. In this action an injunction is also prayed to restrain the defendants (appellants) from obstructing or interfering with plaintiff in the full use and enjoyment of such ditch and water-right claimed by plaintiff, and from interfering with plaintiff and its agents from going upon the right-of-way, and repairing such ditch, etc., and for further relief. The findings of the court below were all favorable to plaintiff, from which the defendants appeal. The action, while partaking somewhat of the character of one to quiet title, is merely an ordinary application addressed to a court of equity to prevent, by injunction, continuous wrongs in the nature of nuisances, and interference with the vested rights of another. It appears that in the spring of 1878 the land above referred to was public and unoccupied lands of the United States. On May 28, of the same year, Ellis filed upon this land, and began a building, and shortly thereafter took up his residence thereon. He made final proof on April 3, 1880. Patent was issued to him November 10, 1882. The patent has the usual exemption of "vested and accrued water-rights and rights to ditches and reservoirs used in connection therewith, as recognized by local customs, laws, decisions," etc., provided for in act of congress July 16, 1886. Defendant Ellis, with Ritter and Steen, in 1878 organized a company or partnership in a planing-mill, etc., to be located near Pomeroy. The water-power for same, by which it was to be operated, was to be taken from Pataha creek, which runs through a corner of this land, thence to be carried by ditch across said land, and they thereupon ordered machinery for

said mill, built a ditch across said lands from Pataha creek to the mill-site, and also a dam in Pataha creek to turn the water into said ditch, at an expense of about $300. Ellis, appellant, was an active agent in selecting the mill-site, arranging the course of the ditch, water-right, etc., and about this time was making his own preëmption, as above stated. In August, 1878, Ellis joined Ritter and Steen in a sale to one B. B. Day, as trustee for several others, by which the work done on the ditch, the machinery ordered, the tools purchased, and all debts incurred, in all amounting to about $3,200, were turned over to said Day, with all the rights that said company had acquired in such ditch, mill-site, etc. This sale to Day subsequently results in the title which is now held by the Pomeroy Improvement Company, appellee, and under this transfer an amount of something like $4,500 was subsequently expended in all, and the mill, as now constructed, was completed and begun operations about September 10, 1878. Later, and after said sale to Day, the defendant Ellis set up a claim to said ditch by reason of his preëmption, etc., and was paid a price for such claim. Again, and when the then owners were completing the ditch, Ellis gave a second notice of a claim based upon his preëmption, but, through fear of possible trouble and complications arising about his patent, not then issued, withdrew this claim, and the work was completed as heretofore stated, Ellis apparently acquiescing. There were occasional contentions between Ellis and the company, and a protest on the part of the former against the change of a few rods in the position of the dam, whereby the head of the ditch was moved up the creek a short distance, but no active nor material steps were taken by Ellis, and the mill was operated and run by said ditch and water-power from the last date above given, September, 1878, until the year 1887, when this suit was brought.

In the foregoing statement we have suggested that this is not merely an action to quiet title, and but little need be

said in disposing of that proposition and the argument presented by appellants, based on the want of allegation and proof of possession by appellee, to sustain an action to quiet title. However, if consideration of the case in that particular is at all necessary, the statement and showing made by appellee that it is in possession and operating said mill by the use of this water-ditch is a sufficient showing of possession of the ditch to meet fully the objection made, while the statement of defendant Ellis of forcibly preventing appellee from going along said ditch and keeping it in repair, and using such water-way, by which the mill is operated—if it has the right to use the same—clearly shows a condition of things which, from their very nature, a court of equity can alone correct by injunction. To the further contention of want of explicitness in the acts asked to be enjoined, a motion at the proper time might have reached this, but such objection now made comes too late. Neither do we consider the change made in the head of the ditch as material or affecting the results. It in no way changed the course or general nature of the ditch, the amount or flow of water—a slight change was made necessary through washouts at the head, not at all changing the general results, as we have stated—nor affecting materially the rights of the parties. If such taking and use by appellee was right, the slight change in the dam necessitated may properly be considered as an incident of such use, as, when a right is acquired, all things necessary to a complete enjoyment of that right go with it. From the conduct of said appellant, as shown in the above statement of facts, sufficient appears to justify affirming the judgment of the court below on the ground of estoppel alone, viz.: Ellis making his preëmption filing, and, contemporaneous therewith, associating himself with Steen and Ritter in constructing the mill (of which this water-ditch was as necessary and essential a part as the machinery of the mill itself), Ellis being, in fact, the active agent of this company, thereafter selling

his interest in the same, and then standing passively by and tacitly acquiescing while large sums are being expended and valuable rights acquired, to attempt, at this late day, and after all this, to claim superior rights under his patent of November, 1882 (final proof made 1880), claiming relationship back to his declaratory statement of May, 1878, is to ignore the commonest principles of equitable estoppel. The fact that he files upon this land, and, simultaneously therewith, he and others in company assert and appropriate this water-right, under an apparently amicable arrangement, estops him; his subsequent sale to others of these rights estops him; and, finally, his tacit consent to it all, by standing by and seeing valuable interests accumulating here, all estop him. As said in *Kirk v. Hamilton*, 102 U. S. 68, 79; "He remained silent while the other expended large sums in improvement, and, in effect, disclaimed title in himself. He was silent when good faith required him to put the other on guard. He should not now be heard to say that that is not true which his conduct had unmistakably declared was true, and upon the faith of which others acted." The doctrine of relation of rights back of the patent we will refer to later. This doctrine may be invoked when it is necessary to do exact justice, but it will not be invoked to do injustice. As is said, "The doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice." *Gibson v. Chouteau*, 13 Wall. 92, 101; *Hill v. Lenormand*, 16 Pac. Rep. 266; *Frisbie v. Whitney*, 9 Wall. 187; *Farley v. Irrigating Co.*, 58 Cal. 142; *Osgood v. Mining Co.*, 56 Cal. 571. It could not be invoked to avoid an equitable estoppel so clearly right as here. The patent issued to Ellis, and on which he relies, excepts, under the act of congress of 1866, "water-rights, ditches and rights-of-way for such, vested or recognized by local customs, laws," etc. Appellee's rights were vested in it in 1878 by the unquestioned appropriation of this water, the building of the mill, ditch, dam, etc.

These rights were fully recognized by the local customs which existed at that time of taking water over the public lands, as here. The exception in the patent of Ellis recognizes this. The rights of appellee, being recognized by custom, were excepted from the patent, and the appropriation of the water by appellee's grantors simultaneously with Ellis' filing on the land; for the company (Ellis, Ritter and Steen) had quite as much right, through recognized custom, to take the water-right, as had Ellis to take the land. These two being, as stated, exercised together, the company could acquire as complete a right to the water as Ellis did to the land.

But in fact Ellis had no vested right which he could assert against the company's water-right prior to April 13, 1880, that being the time when he made final proof, while they acquired a vested right prior to this (spring of 1878), by exercising an actual appropriation of this water. A mere entry upon the public lands gives no vested rights against the government until final proof. It makes a prior right of preëmption, and establishes a privilege as against other claimants, subject until final proof, etc., to the absolute dispossessing power of congress. 9 Wall., p. 195. Land thus occupied is subject to the acquisition of prior water-rights, under local customs and appropriations. It would also be subject to such acquisition up to the time of final proof, when, and only when, such privilege becomes a vested right. It is up to such time, therefore, subject to water-rights being acquired therein by others, unless such settler or preëmptor promptly exercises his water-right, and makes his appropriation. While, therefore, Ellis, at the time of filing, might have also appropriated the water, and thus acquired water-rights by taking steps sufficient to assert his claim to these (if no prior appropriation had occurred), the mere taking up of the land did not work itself a prior appropriation, nor even indicate any purpose so to do; but his not doing so, on the contrary, left such rights

subject to appropriation, until he made final proof and thereby acquired a vested right, by any one who complied with the law or local custom in an appropriation of such water-right. Appropriation, as herein used, may be defined as the intent to take, accompanied by some open, physical demonstration of such intent, and for some valuable use. It is proper to add that such intent or demonstration must be followed up with reasonable diligence, and consummated without unnecessary delay. As we have stated, from the time of his filing and up to the time of final proof (April 30, 1880), Ellis' rights were all uncertain. He might have abandoned or failed to perfect his claim; the government might have withdrawn the land from sale, or through other causes he might have been defeated; the government might have sold or granted the land to another. Until final proof, then, he had no vested right and his patent could not, therefore, relate back, under any circumstances, to his original filing, and back of this final proof, while long prior to this, by the actual appropriation in 1878, the company (of which he was one) had acquired a positive, certain, and vested right. Therefore, regardless of Ellis' subsequent acts and his estoppel, which we have first referred to, we have no hesitancy in saying that on the principle alone of prior appropriation we concur in holding that appellee's right was superior, being prior in point of time. It is, however, a satisfaction to know, in this case, that such prior legal right is so completely supported and fortified by the question of the estoppel of Ellis, through his active interest in said company, and his subsequent acts, referred to, which alone would be ample to base like results upon. The decree of the lower court should be affirmed.

BURKE, C. J., and NASH, J., concur in the result.