241 P.3d 1220 (2010)
LUMMI INDIAN NATION; Makah Indian Tribe; Quinault Indian Nation; Squaxin Island Indian Tribe; Suquamish Tribe; and the Tulalip Tribes, federally recognized Indian tribes; Joan Burlingame, an individual; Lee Bernheisel, an individual; Scott Cornelius, an individual; Peter Knutson, an individual; Puget Sound Harvesters; Washington Environmental Council; Sierra Club; and The Center for Environmental Law and Policy, Respondents/Cross-Appellants,
v.
STATE of Washington; Christine Gregoire, Governor of the State of Washington; Washington Department of Ecology; Jay Manning, Director of the Washington Department of Ecology; Washington Department of Health; and Mary Selecky, Secretary of Health for the State of Washington, Appellants/Cross-Respondents,
Washington Water Utilities Council; Cascade Water Alliance, and Washington State University, Appellants/Cross-Respondents.
No. 81809-6.
Supreme Court of Washington, En Banc.
Argued January 12, 2010.
Decided October 28, 2010.
*1223 Michael Paul Ruark, Attorney at Law, Lake Forest Park, WA, Alan Myles Reichman, Stephen H. North, Mark Hodgeman Calkins, Office of the Attorney, Philip Thomas McDonald, Joseph Anthony Rehberger, Cascadia Law Group, P.L.L.C., Olympia, Mary E. McCrea, Attorney at Law, Winthrop, WA, Adam Waldon Gravley, Tadas A. Kisielius, GordonDerr, L.L.P., Seattle, WA, for Appellants/Cross-Respondents.
Janette K. Brimmer, Kristen L. Boyles, Earthjustice, John B. Arum, Attorney at Law, Brian Cammiade Gruber, Ziontz Chestnut Varnell Berley & Slonim, Mason D. Morisset, Morisset Schlosser Jozwiak & McGaw, Seattle, WA, Shaun Alaric Goho, Harvard Law School, Cambridge, MA, Harry Laurence Johnsen, III, Attorney at Law, Bellingham, WA, Karen Allston, Quinault Indian Nation, Taholah, WA, Kevin R. Lyon, Squaxin Island Legal Department, Shelton, WA, Melody L. Allen, Suquamish Tribe, Office of Tribal Attorney, Suquamish, WA, Kimberly Louise Ordon, Attorney at Law, Duvall, WA, A. Reid Allison III, Tulalip Tribes, Tulalip, WA, for Respondents/Cross-Appellants.
Thomas Mann Pors, Law Office of Thomas M. Pors, Seattle, WA, amicus counsel for Firgrove Mutual Water, Fruitland Mutual Water Company, Graham Hill Mutual Water Company, Inc., Mt. View-Edgewood Water Company, Nob Hill Water Association, Rainier View Water Company, Spanaway Water Company, Summit Water and Supply Company & Washington Water Services Company.
CHAMBERS, J.
¶ 1 In 1998, this court held that under then-existing law, new private water rights did not fully vest until the water was put to a beneficial use, and not merely when the "pumps and pipes" capacity to use the water was built. Dep't of Ecology v. Theodoratus, 135 Wash.2d 582, 586, 957 P.2d 1241 (1998). We cautioned then that we were not considering municipal water rights, which often receive separate treatment in water law. Id. at 594, 957 P.2d 1241. In response to our opinion, the legislature amended the municipal water law, Second Engrossed Second Substitute H.B. 1338, 58th Leg., Reg. Sess. (Wash.2003) (SESSHB 1338), to, among other things, explicitly define certain nongovernmental water suppliers as municipal and to make that definition retroactive. We are now asked whether these amendments violate separation of powers or facially violate due process. We conclude they do not. We reverse in part and affirm in part.

BACKGROUND
¶ 2 The beneficial and wise use of water has been a public concern since before we achieved statehood. Code of 1881, ch. 191, at 434; Ellis v. Pomeroy Improvement Co., 1 Wash. 572, 577-78, 21 P. 27 (1889) (discussing territorial water law). By 1891, our legislature was regulating water, Laws of 1891, ch. 142, at 327, and by 1917, our legislature had declared that:
Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right.
LAWS OF 1917, ch. 117, § 1 (currently codified as RCW 90.03.010). The beneficial use of waters is a priority in our state; our state constitution itself specifically provides that "[t]he use of the waters of this state for irrigation, mining and manufacturing purposes shall be deemed a public use." Wash. Const. art. XXI, § 1. In partial implementation of that principle, water rights can be lost if they are not used, in whole or in part, for *1224 five or more years. RCW 90.14.160 -.180. Water rights can also be lost if they are abandoned. Okanogan Wilderness League, Inc. v. Town of Twisp, 133 Wash.2d 769, 781, 947 P.2d 732 (1997). However, municipal water supply rights (among many others) are not subject to relinquishment. RCW 90.14.140(2)(d).
¶ 3 Like most Western states, Washington regulates "the acquisition of appropriative rights to the use of public waters and ... the distribution of water to those entitled to receive it." 1 WELLS A. HUTCHINS, WATER RIGHTS LAWS IN THE NINETEEN WESTERN STATES 7 (1971). Generally speaking, there is no private right to own the waters that flow across Washington State. Rigney v. Tacoma Light & Water Co., 9 Wash. 576, 583, 38 P. 147 (1894). Instead, a private right to use water can be acquired, and water can be owned once it is diverted for that use. Geddis v. Parrish, 1 Wash. 587, 590-91, 21 P. 314 (1889) (citing Lower Kings River Water Ditch Co. v. Kings River & Fresno Canal Co., 60 Cal. 408 (1882)); Dep't of Ecology v. U.S. Bureau of Reclamation, 118 Wash.2d 761, 767, 827 P.2d 275 (1992) (citing Madison v. McNeal, 171 Wash. 669, 674, 19 P.2d 97 (1933)). As a learned treatise summarizes it:
The appropriative right does not extend to ownership of the corpus of water while it remains in the natural source of supply. It is a right to the use of the watera usufruct. Inherent in the right of appropriation are the requirements that the use made of the appropriated water shall be a beneficial one, and that the right to divert and use the water extends only to the quantity actually applied to such beneficial use. The appropriative right, therefore, is not merely a right to the use of the water; it is a right of beneficial use. This is the view that the courts have taken through the years, probably without significant dissent.
1 HUTCHINS, supra, at 440.
¶ 4 While the details have changed over the years, generally, our regulatory scheme has sought to balance vigorous beneficial use of the State's waters without impairing existing uses. To that end, Washington has a multistep procedure before new water rights can be acquired. While the details will vary depending on whether the applicant seeks to appropriate surface or ground water, among other things, the would-be user first submits an application to the Department of Ecology. RCW 90.03.250; see also ch. 90.44 RCW (ground water). The department may give the applicant a temporary permit to use water while the application is being evaluated. RCW 90.03.250; see also RCW 90.03.260, .290. Second, once the application is complete, the department directs the applicant to publish notice in a paper of general circulation. RCW 90.03.280. Meanwhile, the department determines "what water, if any, is available ... and find[s] and determine[s] to what beneficial use or uses it can be applied." RCW 90.03.290(1). Fourth, if the department is satisfied that water is available and the proposed use is a beneficial use, it issues a permit specifying the amounts of water that can be taken and the beneficial uses to which that water may be applied to. RCW 90.03.290(3). A water right permit represents only an inchoate right, which does not become choate until the water right is perfected. RCW 90.03.330; Theodoratus, 135 Wash.2d at 589-90, 957 P.2d 1241; Ellis, 1 Wash. at 577, 21 P. 27. Before the right is perfected, the applicant has only
"an incomplete appropriative right in good standing. It comes into being as the first step provided by law for acquiring an appropriative right is taken. It remains in good standing so long as the requirements of law are being fulfilled. And it matures into an appropriative right on completion of the last step provided by law."
Theodoratus, 135 Wash.2d at 596, 957 P.2d 1241 (quoting 1 Hutchins, supra, at 226). Permits can be extended for good cause shown, and permits can be canceled if their terms are violated. RCW 90.03.320. Water rights can also be obtained by condemnation. RCW 90.03.040.
¶ 5 Once the water right is perfected, a water right certificate is issued. RCW 90.03.330. This certificate relates back to the time of application, so long as the rights were perfected with reasonable diligence. *1225 RCW 90.03.340; Avery v. Johnson, 59 Wash. 332, 335, 109 P. 1028 (1910). Given that the rights of junior water rights holders are subordinate to earlier rights holders, RCW 90.03.010, and given that water is an increasingly scarce resource, that relation back has significant value. Once rights are perfected, the point of diversion, the use, and the ownership of those rights may be changed or transferred, though only to the extent the water right has been historically put to beneficial use and other rights holders are not harmed. RCW 90.03.380(1); Okanogan Wilderness, 133 Wash.2d at 777-78, 947 P.2d 732; see also R.D. Merrill Co. v. Pollution Control Hearings Bd., 137 Wash.2d 118, 128-29, 969 P.2d 458 (1999); 1 HUTCHINS, supra, at 633-34 (noting that with some exceptions, place of use may not be changed without administrative consent). At the time of Theodoratus, disputes about water rights were first taken to the Pollution Control Hearings Board. E.g., Theodoratus, 135 Wash.2d at 589, 957 P.2d 1241; see also former RCW 43.21B.110 (1998). After Theodoratus, the legislature directed that water rights claimants file a petition with the Department of Ecology that could be referred directly to the superior court or proceed under the Administrative Procedure Act. Ch. 34.05 RCW; RCW 90.03.110; see also 23 TIMOTHY BUTLER & MATTHEW KING, WASHINGTON PRACTICE: ENVIRONMENTAL LAW AND PRACTICE § 8.50, at 335 (2007). At oral argument, counsel for the State also suggested that other rights holders harmed by changes had a tort remedy.
¶ 6 Until recently, it was not entirely clear what it took to perfect a water right. Early case law indicates that rights were not perfected until the water was both appropriated and put to beneficial use. See, e.g., Ortel v. Stone, 119 Wash. 500, 503, 205 P. 1055 (1922) ("The measure of their rights by appropriation is the amount of water which they have actually taken and put to a beneficial use."). However, at least since the 1950s, it seems the Department of Ecology and its predecessor was willing to issue permits and certificates based upon need and capacity rather than the actual beneficial use of the water. Theodoratus, 135 Wash.2d at 587, 957 P.2d 1241. The approach of establishing water rights upon the capacity of the system enjoys the descriptive term of art "pumps and pipes." Uneasiness developed among Washington's water users as different administrations of the Department of Ecology dealt differently with application of the statutory term "beneficial use." The tension between the application of the "beneficial use" and the "pumps and pipes" capacity standards came to a head with this court's decision in Theodoratus, 135 Wash.2d 582, 957 P.2d 1241.
¶ 7 George Theodoratus was a developer whose development progressed slowly over decades, apparently struggling to overcome litigation and economic downturns during the 1970s and 1980s. Id. at 587-88, 957 P.2d 1241. Theodoratus received several extensions of the water permit for his development. Id. The last extension included the condition that his vested water rights would be based upon the actual water put to beneficial use rather than the development's water system's capacity. Id. at 588, 957 P.2d 1241. Theodoratus appealed the actual beneficial use condition, perhaps because he had platted 253 lots, built a water system for 93 houses, built 28 houses, none of which were, as far as we know, actually receiving water. Id. at 587, 608, 957 P.2d 1241 (Sanders, J., dissenting). We examined the current statutes in light of common law and recent court decisions. We concluded that the statutory scheme codified fundamental Western water law and required that actual beneficial use must occur before a water right certificate may issue. Id. at 592, 595, 957 P.2d 1241. In short, we concluded that the Department of Ecology had not been following the statute when it vested water rights based upon system capacity instead of actual beneficial use of water. We cautioned however that we were not considering "issues concerning municipal water suppliers" and noted that "the statutory scheme allows for differences between municipal and other water use." Id. at 594, 957 P.2d 1241. At that time, "municipal water supply" was not defined in chapter 90.03 RCW and the State acknowledges that there were no promulgated rules or policy guides defining "municipal water supply purposes" prior to the 2003 amendments. Opening Br. of Appellant/Cross-Resp't State of *1226 Wash. at 40.[1] On occasion, private water supply companies were deemed municipal, but the department also took the position that private water associations were not entitled to be treated as municipal water suppliers. Clerk's Papers (CP) at 825-31 (Ga. Manor Water Ass'n v. Dep't of Ecology, PCHB No. 93-68 (Order Granting Partial Summ. J. (Nov. 9, 1994))).
¶ 8 Our Theodoratus decision caused concern among existing water users about the vitality of their existing water rights based on capacity. Apparently some water users were further unnerved by a draft policy floated by the Department of Ecology, but never adopted, which would have required all water rights based upon capacity to comply with the actual beneficial use requirement. The legislature responded to these uncertainties in 2003 by significantly amending the water law act. See LAWS OF 2003, 1st Spec. Sess., ch 5; SESSHB 1338. Among other things, the 2003 amendments defined "municipal water supplier" and "municipal water supply purposes" for the first time, defined when "place of use" could be the same as a municipal water supplier's service area, established that municipal water rights were not limited to the number of subscribers, and required specific conservation practices and planning. See LAWS OF 2003, 1st Spec. Sess., ch 5; SESSHB 1338; see also H.B. REP. on Second Engrossed Second Substitute H.B. 1338, at 1-2, 58th Leg., 1st Spec. Sess. (Wash.2003) (listing purposes of enacted bill). The bill also declared that "water right certificate[s] issued prior to [September 9, 2003] for municipal water supply purposes as defined in RCW 90.03.015" based on system capacity were rights in good standing. LAWS OF 2003, 1st Spec. Sess., ch. 5, § 6(3) (codified as RCW 90.03.330(3)). However, "After September 9, 2003, the department must issue a new certificate under subsection (1) of this section for a water right represented by a water right permit only for the perfected portion of a water right as demonstrated through actual beneficial use of water." RCW 90.03.330(4). The legislation essentially put the legislature's imprimatur on our holding in Theodoratus prospectively while confirming the good standing of water certificates issued under the former system. 23 BUTLER & KING, supra, § 8.11, at 293.
¶ 9 In 2006, two groups of challengers sued, contending that several sections of the 2003 amendments were unconstitutional. The two cases were consolidated, and the trial court agreed with the challengers that the amendments to the definition of municipal water suppliers in RCW 90.03.015 and the retroactivity provision of RCW 90.03.330 violated separation of powers as, the court concluded, they effectively overruled Theodoratus.[2] The trial court declined to reach the substantive due process challenges to those three provisions.[3] The judge rejected the remaining facial procedural and substantive due process challenges. We granted review on the motion of all parties.

*1227 ANALYSIS
¶ 10 The challenges before us are facial constitutional challenges to the statutes. "We presume statutes are constitutional and review challenges to them de novo." Ludvigsen v. City of Seattle, 162 Wash.2d 660, 668, 174 P.3d 43 (2007) (citing State v. Shultz, 138 Wash.2d 638, 642-43, 980 P.2d 1265 (1999)). "Construction of the state constitution is a question of law that is reviewed de novo." State v. Pugh, 167 Wash.2d 825, 835, 225 P.3d 892 (2009) (citing State v. Chenoweth, 160 Wash.2d 454, 462, 158 P.3d 595 (2007)); accord City of Kennewick v. Benton County, 131 Wash.2d 768, 771, 935 P.2d 606 (1997).
¶ 11 We note that many of the arguments before us might be better raised in an "as applied" challenge.
An "as applied" challenge occurs where a plaintiff contends that a statute's application in the context of the plaintiff's actions or proposed actions is unconstitutional. If a statute is held unconstitutional as applied, it cannot be applied in the future in a similar context, but it is not rendered completely inoperative. A statute is rendered completely inoperative if it is declared facially unconstitutional. However, a facial challenge must be rejected if there are any circumstances where the statute can constitutionally be applied.
Wash. State Republican Party v. Pub. Disclosure Comm'n, 141 Wash.2d 245, 282 n. 14, 4 P.3d 808 (2000) (citing In re Detention of Turay, 139 Wash.2d 379, 417 n. 28, 986 P.2d 790 (1999)). However, in this case, the challenges are explicitly facial.[4]

1. SEPARATION OF POWERS AND STATUTORY AMENDMENTS
¶ 12 The challengers contend, successfully below, that RCW 90.03.015(3),[5] (4),[6] and RCW 90.03.330(3)[7] facially violate separation of powers because they unsettle a decision of this court retroactively. Specifically, they challenge the 2003 amendments in which the legislature defined municipal water suppliers broadly to include private developers whose projects would provide water to *1228 more than 15 houses, RCW 90.03.015(3), (4); provided that under certain circumstances, a municipality's water rights would not be limited to the specified number of service connections or stated population so long as the change is "consistent with the approved water system plan" among other things, RCW 90.03.260(4), (5); largely made existing water certificates based upon system capacity valid and limited the situations where the Department of Ecology could seek to invalidate a water rights certificate, RCW 90.03.330(2), (3); authorized municipal water suppliers, under certain circumstances, to shift place of use within the boundaries of approved water plans without consulting the Department of Ecology or notifying other water rights' holders, RCW 90.03.386(2); and allowed existing water rights certificates that would now be considered to be for municipal water services to be so amended, RCW 90.03.560.[8] They contend that these provisions change the requirements noted in Theodoratus for private water rights to vest. They claim that the amendments to RCW 90.03.015(3) and (4) define municipal water suppliers so broadly that Theodoratus would now himself qualify as a municipal water supplier. Further, they note that RCW 90.03.330(3) provides that municipal water suppliers who had water rights certificates issued under the former "pumps and pipes" capacity standard had "right[s] in good standing" even if those rights would not have vested under Theodoratus. See also CP at 617. The State acknowledges that these amendments have some retroactive effect. Opening Br. of Appellant/Cross-Resp't at 36.
¶ 13 We examined our separation of powers jurisprudence recently in Hale v. Wellpinit School District No. 49, 165 Wash.2d 494, 198 P.3d 1021 (2009). Previously, in McClarty v. Totem Electric, 157 Wash.2d 214, 228, 137 P.3d 844 (2006), we rejected the definition of "disability" promulgated by the Human Rights Commission in favor of the federal statutory definition. The legislature responded by, for the first time, legislatively defining disability consistent with the Human Rights Commission's earlier attempt, and made that definition retroactive to all claims that accrued prior to McClarty (as well as, of course, all claims accruing after the effective date of the statute). Hale, 165 Wash.2d at 498, 198 P.3d 1021. We upheld the retroactive provision against a separation of powers claim.
¶ 14 In Hale, we began by recognizing the presumption against retroactive application of a statute and the policy behind that presumption. Id. at 507-08, 198 P.3d 1021. Retroactive application of a statute may violate the ex post facto doctrine, id. at 507, 198 P.3d 1021 (citing State v. Schmidt, 143 Wash.2d 658, 672-73, 23 P.3d 462 (2001)), or affect vested rights and violate due process, id. (citing State v. Varga, 151 Wash.2d 179, 195, 86 P.3d 139 (2004)). Retroactive changes in the law alter the status quo in the law upon which people should be able to reasonably rely. Id. Retroactive amendments to the law may violate separation of powers by disturbing judgments, interfering with judicial functions, or cause manifest injustice. Thus, as we observed:
The presumption against retroactive application of a statute or amendment "`is an essential thread in the mantle of protection that the law affords the individual citizen.'" [State v.] Cruz, 139 Wash.2d [186,] 190[, 985 P.2d 384 (1999)] (quoting Lynce v. Mathis, 519 U.S. 433, 439, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)). This presumption "`is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.'" Cruz, 139 Wash.2d at 190 [985 P.2d 384] (quoting Lynce, 519 U.S. at 439 [117 S.Ct. 891]).
*1229 State v. Smith, 144 Wash.2d 665, 673, 30 P.3d 1245, 39 P.3d 294 (2001) (internal quotation marks omitted), superseded by statute, LAWS OF 2002, ch. 107, as recognized in Varga, 151 Wash.2d at 183, 86 P.3d 139.
¶ 15 In Hale, we said that in order to decide whether the retroactive application of a statute violates separation of powers we must determine "`"whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another."'" Hale, 165 Wash.2d at 507, 198 P.3d 1021 (quoting Carrick v. Locke, 125 Wash.2d 129, 135, 882 P.2d 173 (1994) (quoting Zylstra v. Piva, 85 Wash.2d 743, 539 P.2d 823 (1975))). We suggested that legislative intervention to affect the rights of parties in a particular case, would overstep the legislative function. Id. at 509-10, 198 P.3d 1021. Retroactive legislation that interferes with vested rights established by judicial rulings, interferes with a judicial function, or results in manifest injustice or threatens the independence, integrity, or prerogatives of the judicial branch may violate separation of powers. Id. at 507-08, 198 P.3d 1021.
¶ 16 However, in Hale, we also firmly rejected the contention that just because an appellate court's statutory interpretation relates back to the time the statute was originally adopted, any retroactive amendment of that statute violates separation of powers. Id. at 506, 198 P.3d 1021; see also In re Pers. Restraint of Stewart, 115 Wash.App. 319, 75 P.3d 521 (2003). Indeed, it is wholly within the sphere of authority of the legislative branch to make policy, to pass laws, and to amend laws already in effect. Hale, 165 Wash.2d at 509, 198 P.3d 1021. Courts must exercise care not to invade the prerogatives of the legislative branch lest the judicial branch itself violate the doctrine of separation of powers. Co-equal branches must respect one another's independence. In re Salary of Juvenile Dir., 87 Wash.2d 232, 238, 243, 552 P.2d 163 (1976) (citing WILLIAM B. GWYN, THE MEANING OF THE SEPARATION OF POWERS: AN ANALYSIS OF THE DOCTRINE FROM ITS ORIGIN TO THE ADOPTION OF THE UNITED STATES CONSTITUTION 110 (1965)); see also Carrick, 125 Wash.2d at 135, 882 P.2d 173.
¶ 17 Applying these principles to this case, there is no general separation of powers violation caused by the amendments to RCW 90.03.015(3) and (4) and RCW 90.03.330(3). The legislature approached its legislative task both thoughtfully and with deference to this court's construction in Theodoratus. It adopted this court's holding prospectively, RCW 90.03.330(4); it evoked this court's language in stating that "the water right represented by a water right certificate issued prior to September 9, 2003, for municipal supply purposes ... is a right in good standing," RCW 90.03.330(3); and it used the fact that this court did not consider "issues concerning municipal water suppliers" in Theodoratus as an opportunity to secure the rights of some existing water certificate holders, 135 Wash.2d at 594, 957 P.2d 1241. The legislature made no attempt to apply the law to an existing set of facts, affect the rights of parties to the court's judgment, or interfere with any judicial function. Instead, the legislature allowed those who had planned their property development to rely upon the water rights previously approved by the statutorily authorized administrating agency. These amendments do not "threaten[ ] the independence or integrity" of the judicial branch. Hale, 165 Wash.2d at 510, 198 P.3d 1021. Instead, they work to amend an area of the law subject to ongoing legislative refinement in the face of changing conditions and, like in Hale, working in harmony with its co-equal branch. We stress that Mr. Theodoratus is not a party before us and we leave for another day consideration of any as-applied challenges.

2. SEPARATION OF POWERS AND ADJUDICATION OF FACTS
¶ 18 The trial court also found that "RCW 90.03.330(3) violates the separation of powers under the state constitution because it purports to make a legislative determination of adjudicative facts concerning the `good standing' of particular water rights." CP at 617-18. We disagree. Separation of powers is violated when the legislature oversteps its role and adjudicates facts. Justice Brachtenbach ably explored the difference between a legitimate exercise of legislative *1230 authority and a usurpation of the judicial fact finding role in City of Tacoma v. O'Brien, 85 Wash.2d 266, 534 P.2d 114 (1975), a case examining a statute that made certain fuel contracts voidable in the face of skyrocketing oil prices. As we often find, we cannot improve on his words:
All these cases involve the element of adjudication, and we believe that a finding of "economic impossibility" is similarly adjudicatory. A legislature can declare that economic impossibility shall constitute, in the future, a defense in actions involving contractual disputes. A legislature can find that a worldwide shortage of petroleum exists. Finding that existing contracts, entered into at least 6 months prior to the legislation, have become economically impossible to perform, however, is a legal conclusion, a result which follows from examination and consideration of circumstances in a particular case and interpretation and application of legal principles to those facts. As Mr. Justice Holmes wrote in Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150 (1908);
A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter....
O'Brien, 85 Wash.2d at 272, 534 P.2d 114. Thus, when the legislature passes a statute premised on finding an adjudicative fact, it may violate separation of powers. But the legislature did not engage in any adjudication of facts. Rather, the relevant 2003 amendments simply confirmed that the right represented by a water right certificate issued before Theodoratus continued to be "a right in good standing," RCW 90.03.330(3). Confirming existing rights was a legislative policy decision, not a factual adjudication.
¶ 19 Of course, a statute is not constitutional simply because separation of powers is not offended. "The retroactive application of laws may violate the ex post facto doctrine, affect vested rights and violate due process, or affect other judicial functions." Hale, 165 Wash.2d at 507, 198 P.3d 1021 (citations omitted) (citing Schmidt, 143 Wash.2d at 672-73, 23 P.3d 462; Varga, 151 Wash.2d at 195, 86 P.3d 139). But while RCW 90.03.330(3) removes the shadow from water certificates that might have been challenged under Theodoratus, this is a facial challenge to an exercise of general legislative authority.
¶ 20 If any of those water rights were litigated and adjudicative facts developed, they are not in this case. Further, while it may be possible to construe "rights in good standing" to mean that the legislature validated water rights that had been held invalid, the statute can also be construed to mean that such water rights will be treated like any other vested right represented by a water right certificate. We will give statutes constitutional constructions when possible. In re Pers. Restraint of Matteson, 142 Wash.2d 298, 307, 12 P.3d 585 (2000). Whether the application of the statute unconstitutionally unsettles a vested, judicially recognized right is better considered in a due process challenge. In this challenge, we are only considering unchallenged water rights. There is no encroachment on the judicial role that would offend separation of powers principles.

3. DUE PROCESS
¶ 21 We now turn to the facial due process challenges to the 2003 amendments. "[P]roperty owners have a vested interest in their water rights to the extent that the water is beneficially used on the land." Dep't of Ecology v. Adsit, 103 Wash.2d 698, 705, 694 P.2d 1065 (1985) (citing Dep't of Ecology v. Acquavella, 100 Wash.2d 651, 655, 674 P.2d 160 (1983)). Vested water rights cannot be deprived without due process of law. Id. (citing Nielson v. Sponer, 46 Wash. 14, 89 P. 155 (1907)). Because junior rights holders take their water rights subject to the rights of senior rights holders, in times of scarcity the junior rights holders suffer first and suffer the most. Some junior rights holders will likely suffer (and others will likely benefit) because of these amendments. For example, for the *1231 first time, the legislature has defined municipal water supplier as anyone who provides water to 15 or more residences (among other things), and made that definition apply regardless of whether the water rights certificate was issued prior to September 2003. RCW 90.03.015, .330, .560. Municipal water suppliers are not subject to the risk of relinquishment as most private water rights holders, and are subject to a different set of conditions before changing the place of use. RCW 90.14.140(2)(d) (relinquishment); RCW 90.03.380 (requiring individual water rights holders to apply to the department for permission to change place of use), .386(2) (allowing municipal water suppliers to change place of use within boundaries so long as it is consistent with an approved plan). While we take the State's point that even prior to the 2003 amendment, some private water supply companies had been deemed municipal, it is likely that there are junior water rights holders whose rights vested between Theodoratus and the 2003 amendments and whose enjoyment of their water rights will be detrimentally affected by these amendments. Reduced to its essence, the challengers contend that because of this likely detrimental effect on some rights holders, the 2003 amendments facially violate due process.[9]
¶ 22 We are not without sympathy to the challengers' contention that because of the amendments, some junior rights holders' enjoyment of their water rights may be impaired without individualized notice or prior opportunity to comment. But the challengers have cited no case, and we have found none, where mere potential impairment of some hypothetical person's enjoyment of a right has been held to be sufficient for a successful facial due process challenge. Nothing in these amendments changes the legal status of the group the challengers attempt to represent: junior water rights holders who take water subject to the rights of senior rights holders whose status may be improved by these changes. Instead, these amendments confirm what the department has already declared (that certain water rights are rights in good standing) and statutorily define something that had previously been statutorily undefined (the meaning of municipal water supplier). RCW 90.03.015,.260, .330, .386, .560. Of themselves, these changes to the law do not violate due process.[10]
¶ 23 Because this is a facial challenge, no case has been pleaded or proved where any individual rights holder's reasonable expectation of the enjoyment of water rights has actually been impaired or deprived in violation of due process of law. We note that several individuals have submitted declarations tending to show that since 2003, the amount and quality of the water they have been able to draw from their wells has deteriorated. The challengers suggest (but have not established) that this deterioration was caused by the 2003 amendments.[11] We do not intend to minimize their loss. However, this is a facial challenge, and "a facial challenge must be rejected if there are any circumstances where the statute can constitutionally be applied." Wash. State Republican Party, 141 Wash.2d at 282 n. 14, 4 P.3d 808 (citing Turay, 139 Wash.2d at 417, 986 *1232 P.2d 790 n.28). This is not a standard the challengers have met.
¶ 24 Junior rights holders always take their water rights subject to the risk that there may be no water to fulfill those rights. We agree with the trial court and the State that the increased likelihood that might happen to some unknown water rights holders is not a fatal facial due process fault in these amendments.
¶ 25 The challengers specifically contend that the amendments to RCW 90.03.015 and.330 retroactively expand the water rights of municipalities by "resurrecting" water rights certificates issued before Theodoratus based on capacity. We disagree with their characterization of the impact of Theodoratus and the operation of the 2003 amendments. While Theodoratus may have changed the expectations of those who acquired water rights after the date it was issued, it did not automatically divest or invalidate any vested or perfected rights. Theodoratus himself simply sought judicial review of additional requirements the department imposed as a condition of an extension of time to perfect his own water rights. Theodoratus, 135 Wash.2d at 588, 957 P.2d 1241. There was no party before the court with a perfected right under challenge, and thus we had no occasion to consider whether an erroneously perfected right would be invalidated by the department's mistaken practice of issuing certificates based on capacity rather than actual beneficial use. Nor do the amendments by themselves resurrect any relinquished rights. RCW 90.03.330(3) merely declares that water rights certificates issued prior to Theodoratus based on capacity are certificates in good standing. RCW 90.03.330(2)[12] merely limits the power of the department to invalidate water rights certificates. RCW 90.03.015 is merely definitional. None of these statutes deprive junior water rights holders of vested property rights.
¶ 26 The challengers cite several out of state cases for support. See San Carlos Apache Tribe v. Super. Ct. ex rel. County of Maricopa, 193 Ariz. 195, 972 P.2d 179 (1999); Fremont-Madison Irrigation Dist. & Mitigation Group v. Idaho Ground Water Appropriators, Inc., 129 Idaho 454, 926 P.2d 1301 (1996). San Carlos considered a statute that by its plain terms applied to perfected rights, changed the actual priorities of various rights holders, eliminated judicial review of certain factual findings in adjudications, and unconstitutionally denied courts the power to consider the public trust doctrine. San Carlos, 193 Ariz. at 204-06, 210, 215, 972 P.2d 179. See also generally Sean E. O'Day, San Carlos Apache Tribe v. Super. Ct.: Rejecting Legislative Favoritism in Water Right Allocations, 4 U. DENV. WATER L. REV. 29 (2000). The amendments before us may impact the enjoyment of water rights of some junior water rights holders, but do not by their terms change the legal rights or prioritization of water rights holders. Fremont-Madison considered the constitutionality of an amnesty statute that forgave noncompliance with certain statutory requirements for perfecting water rights. 129 Idaho at 457, 926 P.2d 1301. While the court cautioned that enlargements of water rights to the detriment of those that had priority would be unconstitutional, it upheld the statute because it found sufficient protections against such enlargements. Id. at 461, 926 P.2d 1301. But nothing in the amendments before us today themselves deprive any vested *1233 rights holder of any vested right as a matter of law.
¶ 27 The challenges to RCW 90.03.386(2) suffer from a similar problem. RCW 90.03.386(2) says:
The effect of the department of health's approval of a planning or engineering document that describes a municipal water supplier's service area under chapter 43.20 RCW, or the local legislative authority's approval of service area boundaries in accordance with procedures adopted pursuant to chapter 70.116 RCW, is that the place of use of a surface water right or groundwater right used by the supplier includes any portion of the approved service area that was not previously within the place of use for the water right if the supplier is in compliance with the terms of the water system plan or small water system management program, including those regarding water conservation, and the alteration of the place of use is not inconsistent, regarding an area added to the place of use, with: Any comprehensive plans or development regulations adopted under chapter 36.70A RCW; any other applicable comprehensive plan, land use plan, or development regulation adopted by a city, town, or county; or any watershed plan approved under chapter 90.82 RCW, or a comprehensive watershed plan adopted under RCW 90.54.040(1) after September 9, 2003, if such a watershed plan has been approved for the area.
¶ 28 This provision was newly enacted in LAWS OF 2003, 1st Spec. Sess., ch. 5, § 5(2). In effect, it allows municipal water suppliers (which, again, now include many water rights holders who prior to 2003 might have been considered private) to change the place of use of water anywhere within their service system (the area where they provide water) upon the approval of the Department of Health or local legislative body and without Department of Ecology approval and process required for non-municipal water rights holders so long as the change is consistent with other local planning documents. Compare RCW 90.03.386(2) with RCW 90.03.380(1) (setting forth circumstances where notice and comment must be sought before water right can be changed). The challengers contend that this facially violates due process because changes might be approved by the Department of Health or local legislative body without notice or comment to other rights holders.
¶ 29 But, like the due process challenges above, this is not a facial due process defect. Washington law still gives considerable process before any change can be made, and any impact on the rights of others will be at best collateral and indirect. See R.D. Merrill, 137 Wash.2d at 127, 969 P.2d 458 (department can approve changes to water rights only to the extent they are valid); RCW 90.44.100;[13] RCW 90.03.380 (opportunity for review of system-capacity-based certificates); cf. City of Redmond v. Moore, 151 Wash.2d 664, 677, 91 P.3d 875 (2004) (statute that allowed the State to revoke drivers' licenses without an administrative hearing facially unconstitutional because it fails to give any process). Nothing in RCW 90.03.386(2) allows the vested rights of others to be unvested as a matter of law, and if a change in place of use does harm another water rights holder, that can be dealt with on a case by case basis. Further, it only operates prospectively. We affirm Judge Jim Rogers' conclusion that, as a facial matter, due process is not violated.
¶ 30 Next, we turn to the specific due process challenges to RCW 90.03.260(4) and (5). These provisions say:
Appropriation procedureApplication Contents
. . . .
(4) If for community or multiple domestic water supply, the application shall give the projected number of service connections sought to be served. However, for a municipal water supplier that has an approved water system plan under chapter 43.20 RCW or an approval from the department of health to serve a specified *1234 number of service connections, the service connection figure in the application or any subsequent water right document is not an attribute limiting exercise of the water right as long as the number of service connections to be served under the right is consistent with the approved water system plan or specified number.
(5) If for municipal water supply, the application shall give the present population to be served, and, as near as may be estimated, the future requirement of the municipality. However, for a municipal water supplier that has an approved water system plan under chapter 43.20 RCW or an approval from the department of health to serve a specified number of service connections, the population figures in the application or any subsequent water right document are not an attribute limiting exercise of the water right as long as the population to be provided water under the right is consistent with the approved water system plan or specified number.
The challengers assert that these provisions are facially unconstitutional because they allow a municipal water supplier to increase the population served without providing other water rights holders notice or opportunity to be heard. While (4) is completely new, (5) simply requires that the municipality state its present water supply and anticipated future needs, see LAWS OF 2003, 1st Spec. Sess., ch. 5, § 4(4), (5); together, they do not facially undermine vested rights. First, their application is prospective; they only apply when an applicant seeks approval for a new permit or a change of an existing one. Second, they simply integrate such applications into existing water regulatory systems, including systems regulated by the Department of Health under chapter 43.20 RCW. Third, prior to the 2003 amendments, no provision of the water code that we have found or have had our attention drawn to limited municipal water suppliers to some maximum number of clients. Further, the Department of Health has long had the obligation to review and approve water plans to ensure adequacy for a given population. RCW 43.20.250, .260; WAC 246-290-100, -110. As a facial matter, the changes do not violate due process. Again, any impact on a private right is collateral and indirect. Cf. Moore, 151 Wash.2d at 677, 91 P.3d 875.
¶ 31 We affirm the court below and find these provisions do not facially violate substantive or procedural due process.

CONCLUSION
¶ 32 We affirm in part and reverse in part. We hold that these amendments do not violate separation of powers. While nothing in this opinion should be taken to forestall a proper "as applied" challenge, the challengers have not shown that the risk that some junior rights holders' enjoyment of their rights will be impaired by operation of these amendments facially violates due process.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, GERRY L. ALEXANDER, RICHARD B. SANDERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
NOTES
[1] Some of the parties have suggested that the court's conclusion that Theodoratus was not a municipality implies a holding that private parties could not be municipal water suppliers. Whether or not private parties could function as municipal water suppliers was not before the court. Theodoratus did contend that he was building a municipal water supply system. Theodoratus, 135 Wash.2d at 594, 957 P.2d 1241. However, as the court noted, "his development [was] finite," id., which is not a typical characteristic of a municipality. Municipalities are asked to estimate future needs, not merely apply for water to meet existing, finite needs. See, e.g., RCW 90.03.260(5). See generally ch. 43.20 RCW. We note in passing that there are many reasons arguments raised in the briefs may not be addressed in the opinion. The factual predicate may not appear in the record; the argument may not have been raised appropriately below; the issue may not have been properly raised in the petition or the answer; the court may simply feel it unnecessary to address them to reach a just adjudication. "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." State v. Waste Mgmt. of Wis., Inc., 81 Wis.2d 555, 564, 261 N.W.2d 147 (1978).
[2] The trial judge did not have the advantage of this court's decision in Hale v. Wellpinit School District No. 49, 165 Wash.2d 494, 198 P.3d 1021 (2009), which was issued after the trial court's ruling.
[3] The order states that the trial court declined to reach the substantive due process challenge to RCW 90.03.300(3), not .330(3). However, .300 was not challenged and we suspect this was a scrivener's error.
[4] The parties inform us that there is at least one "as applied" challenge currently pending before the Pollution Control Hearings Board. Appellant/Cross-Resp't Wash. State Univ. Opening Br. at 26-27 (citing Cornelius v. Dep't of Ecology, No. 06-099 (Wash. Pollution Control Hr'gs Bd. Dec. 7, 2007)).
[5] "`Municipal water supplier' means an entity that supplies water for municipal water supply purposes." RCW 90.03.015(3). This was a new provision of the 2003 amendments. See Laws of 2003, 1st spec. Sess., ch. 5, § 1(3).
[6] water supply purposes" means a beneficial use of water: (a) For residential purposes through fifteen or more residential service connections or for providing residential use of water for a nonresidential population that is, on average, at least twenty-five people for at least sixty days a year; (b) for governmental or governmental proprietary purposes by a city, town, public utility district, county, sewer district, or water district; or (c) indirectly for the purposes in (a) or (b) of this subsection through the delivery of treated or raw water to a public water system for such use. If water is beneficially used under a water right for the purposes listed in (a), (b), or (c) of this subsection, any other beneficial use of water under the right generally associated with the use of water within a municipality is also for "municipal water supply purposes," including, but not limited to, beneficial use for commercial, industrial, irrigation of parks and open spaces, institutional, landscaping, fire flow, water system maintenance and repair, or related purposes. If a governmental entity holds a water right that is for the purposes listed in (a), (b), or (c) of this subsection, its use of water or its delivery of water for any other beneficial use generally associated with the use of water within a municipality is also for "municipal water supply purposes," including, but not limited to, beneficial use for commercial, industrial, irrigation of parks and open spaces, institutional, landscaping, fire flow, water system maintenance and repair, or related purposes.
RCW 90.03.015(4). This was also a new provision of the 2003 amendments. See LAWS OF 2003, 1st Spec. Sess., ch. 5, § 1(4).
[7] subsection applies to the water right represented by a water right certificate issued prior to September 9, 2003, for municipal water supply purposes as defined in RCW 90.03.015 where the certificate was issued based on an administrative policy for issuing such certificates once works for diverting or withdrawing and distributing water for municipal supply purposes were constructed rather than after the water had been placed to actual beneficial use. Such a water right is a right in good standing.
RCW 90.03.330(3). This was a new provision of the 2003 amendments. See Laws of 2003, 1st Spec. Sess., ch. 5, § 6(3).
[8] requested by a municipal water supplier or when processing a change or amendment to the right, the department shall amend the water right documents and related records to ensure that water rights that are for municipal water supply purposes, as defined in RCW 90.03.015, are correctly identified as being for municipal water supply purposes. This section authorizes a water right or portion of a water right held or acquired by a municipal water supplier that is for municipal water supply purposes as defined in RCW 90.03.015 to be identified as being a water right for municipal water supply purposes. However, it does not authorize any other water right or other portion of a right held or acquired by a municipal water supplier to be so identified without the approval of a change or transfer of the right or portion of the right for such a purpose.
RCW 90.03.560.
[9] Citing its own policy 2030, the State contends that even municipal water supply rights may be relinquished under certain circumstances when the water is not beneficially used for a sufficient period of time. Wash. State Dep't of Ecology, 2003 Municipal Water Law Interim Guidance and Policy Statement (GUID-2030). As it is not necessary for our disposition and as the parties are not meaningfully adverse on this subject, we do not consider whether this is so.
[10] The challengers cite Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for the due process standard. Mathews establishes a three part test to determine what process is due before a right can be deprived. But here, the question is not about an administrative process that ends with the challenger's rights being confirmed or denied. The impact on the challengers' rights is occasional, collateral and attenuated, and a rights holder has a vested interest in the legal status of other rights holders. We do not find Mathews helpful. Nor, given the inchoate and hypothetical nature of the potential injuries, do we find this a good case to explore the tension between the State's police power and the individual's due process rights.
[11] Washington Water Utilities Council challenges the trial judge's decision to admit evidence relevant to these assertions on the grounds that the evidence was not relevant to a facial constitutional challenge. We find no abuse of discretion.
[12] as provided for the issuance of certificates under RCW 90.03.240 and for the issuance of certificates following the approval of a change, transfer, or amendment under RCW 90.03.380 or 90.44.100, the department shall not revoke or diminish a certificate for a surface or ground water right for municipal water supply purposes as defined in RCW 90.03.015 unless the certificate was issued with ministerial errors or was obtained through misrepresentation. The department may adjust such a certificate under this subsection if ministerial errors are discovered, but only to the extent necessary to correct the ministerial errors. The department may diminish the right represented by such a certificate if the certificate was obtained through a misrepresentation on the part of the applicant or permit holder, but only to the extent of the misrepresentation. The authority provided by this subsection does not include revoking, diminishing, or adjusting a certificate based on any change in policy regarding the issuance of such certificates that has occurred since the certificate was issued. This subsection may not be construed as providing any authority to the department to revoke, diminish, or adjust any other water right.
RCW 90.03.330(2).
[13] The 2010 legislature passed, and the governor partially vetoed, a bill regarding water rights processing that touched on RCW 90.44.100 (among many other statutes). Laws of 2010, ch. 285. While the amendments do not appear directly relevant to our analysis, given that the parties have not had an opportunity to brief them, we pass no judgment upon them.